# United States Court of Appeals
# For The Federal Circuit

——◆◆◆——

NUTRICIA NORTH AMERICA, INC.,

*Plaintiff-Appellant,*

—v.—

UNITED STATES,

*Defendant-Appellee.*

_____

Appeal from the United States Court of International Trade
in No. 1:16-cv-00008-TCS, Senior Judge Timothy C. Stanceu

## BRIEF FOR DEFENDANT-APPELLEE, UNITED STATES

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. MCCARTHY
Director

JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

LUKE MATHERS
Trial Attorney
Civil Division, Dept. of Justice,
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. No. (212) 264-9236
*Attorneys for Defendant-Appellee*

*Of Counsel*:

YELENA SLEPAK
Office of Assistant Chief Counsel
U.S. Customs and Border Protection
New York, New York

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................1

ISSUES PRESENTED................................................................................3

STATEMENT OF THE CASE......................................................................3

    I.    Nutricia Imports Medical Foods, Coming In A Variety Of Flavors But Lacking Active Ingredients, That Provide Therapeutic Diets To Those Who Have Distinctive Nutritional Requirements...........................................3

    II.    The Trial Court Concludes The Undisputed Facts Show That Nutricia's Medical Foods Are Foods, Not "Medicaments" Or Non-Therapeutic "Articles Specially Designed" For The "Handicapped" .......................................7

SUMMARY OF ARGUMENT .................................................................9

ARGUMENT ...........................................................................................10

    I.    Tariff Classification Principles And Standard Of Review ..........................10

    II.    The Trial Court Correctly Held That Nutricia's Medical Foods, Being Foods Such As Dietetic Ones That Contain Only Nutritional Substances, Are Not "Medicaments"................................................................................12

        A.    Nutricia's Medical Foods Are "Dietetic" Or Similar Foods Excluded From Classification As "Medicaments" Of Heading 3004, As The Text Of Note 1(a) And The Explanatory Notes Confirm.............................................13

        B.    Nutricia's Counterarguments—Which Ignore Note 1(a) To Chapter 30 And Misconstrue The HTSUS's Plain Text—Are Unpersuasive ...................16

    III.   The Trial Court Correctly Classified Nutricia's Medical Foods As "Food Preparations Not Elsewhere Specified Or Included" Of Heading 2106.............21

    IV.   The Trial Court Correctly Held That Nutricia's Nutritionally "Therapeutic" Medical Foods Are Not Secondarily Classifiable As Non-Therapeutic "Articles" For The "Handicapped" Of Subheading 9817.00.96..........................................22

CONCLUSION...........................................................................................29

FEDERAL RULE OF APPELLATE PROCEDURE 28(F) ADDENDUM ..........30

# TABLE OF AUTHORITIES

**Cases**

*ADC Telecomms., Inc. v. United States*,
   916 F.3d 1013 (Fed. Cir. 2019) ...................................................... 10, 11, 19, 22

*Alcan Food Packaging (Shelbyville) v. United States*,
   771 F.3d 1364 (Fed. Cir. 2014) ...................................................................17

*Bauer Nike Hockey USA, Inc. v. United States*,
   393 F.3d 1246 (Fed. Cir. 2004) ...................................................................19

*Bragdon v. Abbott*,
   524 U.S. 624 (1998) .....................................................................................14

*Carl Zeiss, Inc. v. United States*,
   195 F.3d 1375 (Fed. Cir. 1999) ...................................................................11

*ClearCorrect Operating, LLC v. Int'l Trade Comm'n*,
   810 F.3d 1283 (Fed. Cir. 2015) ...................................................................23

*Deckers Outdoor Corp. v. United States*,
   714 F.3d 1363 (Fed. Cir. 2013) ...................................................................23

*Drygel, Inc. v. United States*,
   541 F.3d 1129 (Fed. Cir. 2008) ...................................................................12

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
   545 U.S. 546 (2005) .....................................................................................27

*Fromson v. Advance Offset Plate, Inc.*,
   755 F.2d 1549 (Fed. Cir. 1985) ...................................................................28

*Home Depot U.S.A., Inc. v. United States*,
   915 F.3d 1374 (Fed. Cir. 2019) ...................................................................15

*Kent Int'l, Inc. v. United States*,
   393 F. Supp. 3d 1218 (Ct. Int'l Trade 2019) ...............................................19

*Magid Glove & Safety Mfg. Co. v. United States*,
   87 F.4th 1352 (Fed. Cir. 2023) ....................................................................18

*Orlando Food Corp. v. United States,*
140 F.3d 1437 (Fed. Cir. 1998) .................................................. 21, 23

*Park B. Smith, Ltd. v. United States,*
347 F.3d 922 (Fed. Cir. 2003) ...........................................................11

*Ratzlaf v. United States,*
510 U.S. 135 (1994) .........................................................................24

*Richards Med. Co. v. United States,*
720 F. Supp. 998 (Ct. Int'l Trade 1989) ................................... 25, 28

*Richards Med. Co. v. United States,*
910 F.2d 828 (Fed. Cir. 1990) .......................................... 25, 27, 28

*RKW Klerks Inc. v. United States,*
94 F.4th 1374 (Fed. Cir. 2024) .................................................. 10, 11

*Roche Vitamins, Inc. v. United States,*
772 F.3d 728 (Fed. Cir. 2014) .................................................. 11, 17

*Sharp Microelectronics Tech., Inc. v. United States,*
122 F.3d 1446 (Fed. Cir. 1997) ........................................................18

*Sigvaris, Inc. v. United States,*
899 F.3d 1308 (Fed. Cir. 2018) ........................................................22

*StoreWALL, LLC v. United States,*
644 F.3d 1358 (Fed. Cir. 2011) ........................................................11

## Treaties

Protocol to the Agreement on the Importation of Educational, Scientific and
Cultural Materials, *opened for signature* Mar. 1, 1977, 1259 U.N.T.S. 3 ..........26

## Statutes

21 U.S.C. § 360ee(b)(3) ................................................................... 3, 13

28 U.S.C. § 1581(a) ............................................................................7

## Regulations

21 C.F.R. § 101.9(j)(8) .................................................................. 4, 13, 14

**Harmonized Tariff Schedule of the United States**

General Rules of Interpretation:

    General Rule of Interpretation 1 ................................................................ *passim*

    General Rule of Interpretation 3(a)........................................................ 19, 21

    General Rule of Interpretation 6 ............................................................ 12, 18

Chapter 21:

    Note 1(f)........................................................................................................19

    Heading 2106 ........................................................................................ *passim*

        Subheading 2106.90.99.................................................... 7, 8, 21, 22

Chapter 30:

    Note 1(a) ............................................................................................... *passim*

    Heading 3004 ........................................................................................ *passim*

Chapter 38:

    Heading 3808 ...............................................................................................23

Chapter 90:

    Heading 9013 ...............................................................................................18

Chapter 98:

    U.S. Note 4(b) to Subchapter XVII ...........................................................24

        U.S. Note 4(b)(iii) to Subchapter XVII ............................... *passim*

        U.S. Note 4(b)(iv) to Subchapter XVII.................................... 27, 29

    Subheading 9817.00.92.................................................................................24

    Subheading 9817.00.94.................................................................................24

    Subheading 9817.00.96.......................................................................... *passim*

**Other Authorities**

David A. Bender, *A Dictionary of Food and Nutrition* (3d ed. 2009)............. 18, 19

Diana Cardenas, *Let not thy food be confused with thy medicine: The Hippocratic misquotation*, 8 European e-Journal of Clinical Nutrition and Metabolism 260 (2013), https://www.researchgate.net/publication/258099432 ............................1

*Dietetic*, <u>Merriam-Webster Online Dictionary</u>,
 https://www.merriam-webster.com/dictionary/dietetic ......................................17

Explanatory Note 30.04 ........................................................................................20

*Food*, <u>Merriam-Webster Online Dictionary</u>,
 https://www.merriam-webster.com/dictionary/food...........................................16

Loyd V. Allen, Jr. & Howard C. Ansel,
 *Ansel's Pharmaceutical Dosage Forms and Drug Delivery Systems*
 (10th ed. 2014) ................................................................................................21

*Nutricia N. Am. v. President of the Can. Border Servs. Agency*,
 2011 CarswellNat 7137 (C.I.T.T.) (WL) ............................................................19

Peggy S. Stanfield & Y.H. Hui,
 *Nutrition and Diet Therapy: Self-Instructional Approaches* (5th ed. 2010) ......18

*Therapeutic*, <u>Merriam-Webster Online Dictionary</u>,
 https://www.merriam-webster.com/dictionary/therapeutic ...............................38

U.S. Food & Drug Admin., Ctr. for Food Safety & Applied Nutrition,
 *Frequently Asked Questions About Medical Foods: Guidance for Industry*
 (3d ed. Mar. 2023), https://www.fda.gov/media/97726/download .....................4

United Nations Educational, Scientific and Cultural Organization,
 *A guide to the operation of the 'Florence Agreement' and its Protocol* (1978),
 https://unesdoc.unesco.org/ark:/48223/pf0000059329 ......................................35

## <u>STATEMENT OF RELATED CASES</u>

In accordance with Rule 47.5 of the United States Court of Appeals for the Federal Circuit, counsel for defendant-appellee, the United States, states that there is no other appeal arising from the decision of the United States Court of International Trade that is the subject of this action now pending before this Court or any other court of appeals; and that counsel is not aware of any cases pending in this Court or any other tribunal that will directly affect or be directly affected by this Court's decision in the pending appeal.

# INTRODUCTION

Doctors have long recognized food's ability to heal the sick. The ancient Greek physician Hippocrates, "the father of Western medicine," is credited with coining the phrase "let thy food be thy medicine and thy medicine be thy food." His eponymous oath required doctors to swear that they would "apply dietetic measures for the benefit of the sick according to [their] ability and judgment." But even Hippocrates understood the difference between food and medicine. Diana Cardenas, *Let not thy food be confused with thy medicine: The Hippocratic misquotation*, 8 European e-Journal of Clinical Nutrition and Metabolism 260 (2013), https://www.researchgate.net/publication/258099432 (explaining that, although they recognized food's role "in health and disease states," "Hippocratic doctors clearly saw a difference between food and medicine").

So does the Harmonized Tariff Schedule of the United States (HTSUS). It classifies a number of "[f]ood preparations" in heading 2106 but separately classifies certain "[m]edicaments" in heading 3004.[1] Plaintiff-appellant Nutricia North America, Inc., however, argues that its imported "medical foods"—foods that have been specially formulated to meet the distinctive nutritional requirements

---

[1] The full text of the relevant tariff provisions is set forth in the Fed. R. App. P. 28(f) addendum.

of people with certain medical conditions—should be classified not as "[f]ood preparations" but rather as "[m]edicaments" due to their use in nutritional therapy. Alternatively, Nutricia contends that its medical foods qualify as non-therapeutic "[a]rticles specially designed or adapted for the use or benefit of the blind or other physically or mentally handicapped persons" of subheading 9817.00.96.

The United States Court of International Trade (the trial court) rejected Nutricia's arguments. It first held that the medical foods are "[f]oods," "such as dietetic" and "diabetic" ones, expressly excluded from classification under heading 3004 by operation of note 1(a) to chapter 30. The trial court then held that Nutricia's medical foods are not covered by subheading 9817.00.96's description of non-therapeutic "[a]rticles specially designed or adapted for the use or benefit of" the "handicapped," which covers braille devices, prosthetics, and the like. Accordingly, the trial court held that the medical foods, being "[f]ood preparations not elsewhere specified or included," were classifiable only under heading 2106.

The trial court's judgment was correct. The undisputed facts show that Nutricia's medical foods are "dietetic" or similar food preparations—not "[m]edicaments." And they are nutritionally "therapeutic" preparations excluded from classification under subheading 9817.00.96 by U.S. note 4(b)(iii) to subchapter XVII, chapter 98. The judgment should therefore be affirmed.

## **ISSUES PRESENTED**

1)     Whether the trial court correctly held that Nutricia's medical foods are "[f]oods," "such as dietetic" and "diabetic" foods, excluded by note 1(a) to chapter 30 from classification as "[m]edicaments" of heading 3004.

2)     Whether the trial court correctly held that Nutricia's medical foods are properly classified as "[f]ood preparations not elsewhere specified or included" of heading 2106.

3)     Whether the trial court correctly held that Nutricia's medical foods are not classifiable as non-therapeutic "[a]rticles specially designed or adapted for the use or benefit of the blind or other physically or mentally handicapped persons" of subheading 9817.00.96.

## **STATEMENT OF THE CASE**

**I.**    **Nutricia Imports Medical Foods, Coming In A Variety Of Flavors But Lacking Active Ingredients, That Provide Therapeutic Diets To Those Who Have Distinctive Nutritional Requirements**

A medical food is "a food which is formulated to be consumed or administered enterally under the supervision of a physician and which is intended for the specific dietary management of a disease or condition for which distinctive nutritional requirements, based on recognized scientific principles, are established by medical evaluation." 21 U.S.C. § 360ee(b)(3). It is not a drug. U.S. Food & Drug Admin., Ctr. for Food Safety & Applied Nutrition, *Frequently Asked*

*Questions About Medical Foods: Guidance for Industry* at 5 (3d ed. Mar. 2023), https://www.fda.gov/media/97726/download. Rather, "[i]t is a specially formulated and processed product (as opposed to a naturally occurring foodstuff used in its natural state) for the partial or exclusive feeding of a patient" with "special medically determined nutrient requirements, the dietary management of which cannot be achieved by the modification of the normal diet alone." 21 C.F.R. § 101.9(j)(8).

The medical foods that Nutricia imported in this case are called MSUD Lophlex® LQ, Periflex® Infant, Periflex® Junior, Neocate® Junior, and KetoCal® 4:1 LQ. Appx859, 1500, 1763, 1767, 1776. They have much in common.

Each has been formulated to omit certain nutrients present in naturally occurring foods that people with certain conditions cannot ingest, while still providing complete (or near-complete) nutrition. *Id.*; Appx184–88, 1595–96. In the case of Neocate, MSUD Lophlex, and Periflex—described in Nutricia's own documents as "dietetic goods," Appx948, 1082, 1234, 1380—this means replacing proteins with amino acids (nutrients that are the building blocks of proteins). Appx175, 184–87. Particular amino acids are further omitted from MSUD Lophlex and Periflex. Appx184–86. And for KetoCal, carbohydrates are largely omitted in favor of fats to provide a ketogenic diet. Appx187–88.

Specifically, MSUD Lophlex is a liquid formula, "[a]vailable in mixed berry blast flavor," that "[c]ontains a balanced mixture of … carbohydrates, vitamins, minerals," the omega-3 fatty acid DHA, and "essential and non-essential amino acids" other than the essential amino acids leucine, isoleucine, and valine. Appx859.   It is formulated for those suffering from Maple Syrup Urine Disease (MSUD).   MSUD is a genetic condition that impairs one's ability to metabolize leucine, isoleucine, and valine, causing a toxic build-up of those nutrients in the body if whole proteins are ingested.   Appx176–77.   By replacing proteins with individual amino acids and omitting leucine, isoleucine, and valine from the mix, MSUD Lophlex provides nutrition while avoiding the toxic build-up of those amino acids.   Appx184, 188–89.

Similarly, Periflex (in both its "infant" and "junior" versions) is a powdered formula that "[c]ontains a balanced mixture of … carbohydrates, fat, vitamins," "minerals," and all "essential and non-essential amino acids" other than the essential amino acid phenylalanine.   Appx1500, 1763.   It is formulated for those suffering from phenylketonuria (PKU).   PKU is a genetic condition that impairs the body's ability to metabolize phenylalanine.   Appx177–78.   By replacing proteins with individual amino acids and omitting phenylalanine, Periflex provides nutrition while avoiding a toxic build-up of phenylalanine.   Appx185–86, 189–91.

Neocate, in contrast, is a "[h]ypoallergenic," "nutritionally complete,

5

powdered amino acid-based" formula with three flavor options: unflavored, "tropical," or chocolate. Appx1767. It is formulated for those with a variety of conditions, ranging from "[c]ow and soy milk allergy" and "[m]ultiple food protein intolerance" to a number of "[f]ood allergy-associated conditions." *Id.* People with these conditions are impaired in their ability to digest naturally occurring whole proteins. Appx178–81. By replacing proteins with individual amino acids, Neocate provides complete nutrition while avoiding such digestive problems. Appx186–87.

Finally, KetoCal is a liquid, "nutritionally complete" formula, "in a 4:1 ratio" of fat to carbohydrate and protein, that comes in "vanilla flavor or unflavored" versions. Appx1776. Unlike Neocate, MSUD Lophlex, and Periflex, and like conventional foods, KetoCal contains proteins rather than amino acids. *Id.* But it largely omits carbohydrates as a dietary energy source in favor of fats to provide a high-fat, low-carbohydrate ketogenic diet. *Id.*; Appx181–83, 187–88, 196–200. Nutritional therapy in the form of a ketogenic diet can be effective in managing epilepsy, among other conditions. *Id.* By largely replacing carbohydrates with fats, KetoCal provides a ketogenic diet for those whose conditions can be lessened with such a diet. Appx181–83.

None of the medical foods is administered intravenously. Appx4700 ¶ 8, 4910 ¶ 8. Nor do any of the medical foods contain any active pharmaceutical

ingredient.  Appx175–76, 859, 1500, 1763, 1767, 1776, 4774.  All, however, are "indicated for use in the treatment of a variety of diseases, predominantly in very young children," and "in some instances they are the only, or primary, available treatment to ameliorate these severe and sometimes fatal conditions."  Appx35 (quotation omitted).   Accordingly, "[m]edical professionals refer to the deployment of these products as 'nutritional therapy.'"  *Id.* (quotation and emphasis omitted).

Nutricia imported the medical foods at issue in two entries made at the Port of Philadelphia, Pennsylvania, on November 26, 2014, and two entries made at the Port of Washington–Dulles, D.C., on November 13, 2014.  Appx4699 ¶ 1, Appx4909 ¶ 1.  United States Customs and Border Protection classified the medical foods under HTSUS subheading 2106.90.99, subject to a 6.4 percent *ad valorem* duty, and liquidated the entries accordingly.  *Id.* ¶ 2.  Nutricia filed two protests covering its four entries, which were ultimately denied.  Appx4700 ¶¶ 3–4, Appx4909 ¶¶ 3–4.  Nutricia then timely filed this action in the trial court, *see* 28 U.S.C. § 1581(a), to challenge Customs' classification.

## II.    The Trial Court Concludes The Undisputed Facts Show That Nutricia's Medical Foods Are Foods, Not "Medicaments" Or Non-Therapeutic "Articles Specially Designed" For The "Handicapped"

On the parties' cross-motions for summary judgment, the trial court issued an opinion granting judgment in the Government's favor.  Appx1–38.  The trial

court first held that Nutricia's medical foods were not classifiable as duty-free "[m]edicaments" of heading 3004. "Foods … such as dietetic" and "diabetic" ones that are not administered intravenously are excluded from heading 3004 by note 1(a) to chapter 30. Thus, the trial court concluded that nutritional preparations like Nutricia's medical foods, lacking any "medicinal" substance and falling within note 1(a)'s exclusion, cannot be classified as "[m]edicaments" of heading 3004, as the explanatory notes confirm. Appx11–30.

Next, the trial court held that Nutricia's medical foods were appropriately classified under heading 2106 as "[f]ood preparations not elsewhere specified or included." Appx31–33. At the subheading level, the trial court agreed with Customs that subheading 2106.90.99 was the appropriate classification, as no other subheadings described Nutricia's medical foods. Appx33–34.

Finally, the trial court held that subheading 9817.00.96—a special provision that confers duty-free entry on certain non-therapeutic "[a]rticles" for the "handicapped"—did not encompass Nutricia's medical foods. It first noted that the "undisputed facts provide some support for" the Government's argument that Nutricia's medical foods were nutritionally "therapeutic" within the meaning of U.S. note 4(b)(iii) to subchapter XVII, chapter 98, which excludes "therapeutic" articles from subheading 9817.00.96. Appx35. The trial court then emphasized that, fundamentally, subheading 9817.00.96's description of "[a]rticles specially

designed or adapted for the use or benefit of the blind or other physically or mentally handicapped persons" is not "so broad as to cover foods, food supplements, or nutritional substances or ingredients of any type." Appx38. Accordingly, the trial court granted the Government's cross-motion for summary judgment. Appx1. Nutricia timely filed its notice of appeal. Appx39.

## SUMMARY OF ARGUMENT

MSUD Lophlex, Periflex, Neocate, and KetoCal are medical foods, formulated for the dietary management of certain conditions, that undisputedly contain only nutrients—not drugs. They are "dietetic" or similar foods, not intravenously administered, excluded from classification under heading 3004 by note 1(a) to chapter 30. Nutricia's counterarguments, which would have the Court ignore note 1(a) or misconstrue it to encompass only "normal" foods, fail. Nutricia's medical foods are thus properly classified as "[f]ood preparations" of heading 2106, as the trial court held.

Furthermore, the medical foods cannot be secondarily classified as "[a]rticles specially designed or adapted for the use or benefit of" the "handicapped" of subheading 9817.00.96. That subheading, as informed by U.S. note 4(b)(iii) to subchapter XVII, chapter 98, and its statutory context, does not encompass "therapeutic" preparations. Nutricia's medical foods, however, are undisputedly nutritionally "therapeutic." Accordingly, this Court should affirm the

trial court's judgment that Nutricia's medical foods are properly classified under heading 2106 alone.

## I.  Tariff Classification Principles And Standard Of Review

Merchandise imported into the United States is hierarchically classified under the provisions of the HTSUS.  "The HTSUS scheme is organized by" sections, chapters, and "headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category."  *ADC Telecomms., Inc. v. United States*, 916 F.3d 1013, 1017 (Fed. Cir. 2019) (quotation omitted).  When there is no genuine dispute of material fact about the goods at issue (as is the case here), their classification under one heading or another "collapses into a determination of the proper meaning and scope of the HTSUS terms that, as a matter of statutory construction, is a question of law."  *RKW Klerks Inc. v. United States*, 94 F.4th 1374, 1378 (Fed. Cir. 2024) (quotation omitted). The Court decides that question of law, "as well as whether there are genuine disputes of material fact," de novo.  *Id.*

In making this determination, the Court applies the HTSUS's six "General Rules of Interpretation (GRIs) that govern the classification of merchandise."  *Id.* "The GRI[s] apply in numerical order, meaning that subsequent rules are

inapplicable if a preceding rule provides proper classification." *ADC Telecomms.*, 916 F.3d at 1017 (quotation omitted).

"GRI 1 provides, 'classification shall be determined according to the terms of the headings and any relative section or chapter notes.'" *RKW Klerks*, 94 F.4th at 1378 (quoting GRI 1). Thus, "[w]hen applying GRI 1, [a] court first construes the language of the heading, and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading." *Id.* (quotation omitted). Section and chapter notes, in other words, "are not optional interpretive rules." *Park B. Smith, Ltd. v. United States*, 347 F.3d 922, 926 (Fed. Cir. 2003). They "are an integral part of the HTSUS" and carry "the same legal force as the text of the headings." *Roche Vitamins, Inc. v. United States*, 772 F.3d 728, 731 (Fed. Cir. 2014).

The HTSUS's terms are construed in accordance with their common and commercial meaning, which are presumed to be the same. *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). To "determine the common commercial meaning of a tariff term, courts may consult dictionaries, encyclopedias, scientific authorities, and other reliable information sources." *StoreWALL, LLC v. United States*, 644 F.3d 1358, 1363 (Fed. Cir. 2011). That includes the World Customs Organization's explanatory notes to the Harmonized Tariff Schedule, which, though not binding, "are 'generally indicative' of the

proper interpretation of a tariff provision." *Drygel, Inc. v. United States*, 541 F.3d 1129, 1134 (Fed. Cir. 2008) (quotation omitted). Courts credit "the unambiguous text of relevant explanatory notes absent persuasive reasons to disregard it." *Id.*

After determining the heading under which a good is classified pursuant to GRI 1, the Court must then determine the applicable subheading pursuant to GRI 6. "[T]he classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to the [preceding GRIs] on the understanding that only subheadings at the same level are comparable." GRI 6.

## II. The Trial Court Correctly Held That Nutricia's Medical Foods, Being Foods Such As Dietetic Ones That Contain Only Nutritional Substances, Are Not "Medicaments"

The trial court correctly held that, under GRI 1, Nutricia's medical foods are excluded from classification as "[m]edicaments" because they are "dietetic" or similar foods undisputedly "comprised entirely of 'nutritional substances.'" Appx26. Heading 3004 covers, in relevant part, "[m]edicaments … consisting of mixed or unmixed products for therapeutic or prophylactic uses, put up … in forms or packings for retail sale." Note 1(a), however, provides that chapter 30 (which contains heading 3004) "does not cover … [f]oods or beverages (such as dietetic, diabetic or fortified foods, food supplements, tonic beverages and mineral waters), other than nutritional preparations for intravenous administration (section IV)."

Nutricia's medical foods are "dietetic" or similar foods that note 1(a) excludes from chapter 30. They cannot, therefore, be classified as "[m]edicaments" of heading 3004—regardless of their nutritionally therapeutic effects.

### A. Nutricia's Medical Foods Are "Dietetic" Or Similar Foods Excluded From Classification As "Medicaments" Of Heading 3004, As The Text Of Note 1(a) And The Explanatory Notes Confirm

The plain text of note 1(a) excludes "[f]oods … (such as dietetic, diabetic, or fortified foods …)" that are not intravenously administered from classification under any heading of chapter 30. "Food" means "material consisting essentially of protein, carbohydrate, and fat" along with "supplementary substances (such as minerals, vitamins, and condiments)." *Food*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/food. That definition covers Nutricia's medical foods: they consist essentially of proteins (or their constituent amino acids), carbohydrates, fats, vitamins, minerals, and flavorings; provide complete or near-complete nutrition; and, to top it off, are deemed foods, rather than drugs, by Federal law and regulation, 21 U.S.C. § 360ee(b)(3); 21 C.F.R. § 101.9(j)(8). Appx184–88, 859, 1500, 1595–96, 1763, 1767, 1776.

Note 1(a)'s inclusion of "dietetic" foods further confirms that Nutricia's medical foods are excluded from chapter 30. "Dietetic" foods are those "adapted for use in special diets." *Dietetic*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/dietetic. And by Federal regulation,

a medical food "is a specially formulated and processed product (as opposed to a naturally occurring foodstuff used in its natural state) for the partial or exclusive feeding of a patient" with "special medically determined nutrient requirements, the dietary management of which cannot be achieved by the modification of the normal diet alone." 21 C.F.R. § 101.9(j)(8). That fits the plain meaning of dietetic.

Reliable sources thus consistently refer to medical foods as dietetic. One provides that medical foods are "also known as dietetic foods." David A. Bender, *A Dictionary of Food and Nutrition* 224 (3d ed. 2009). Another calls a medical food similar to Periflex a "dietetic product[]." Peggy S. Stanfield & Y.H. Hui, *Nutrition and Diet Therapy: Self-Instructional Approaches* 358 (5th ed. 2010), Appx4813. And the most reliable source of all—Nutricia's own documentation— describes the medical foods as "dietetic goods." Appx948, 1082, 1234, 1380.

At any rate, Nutricia's medical foods need only be *similar* to dietetic and diabetic foods to be excluded from heading 3004. Note 1(a)'s parenthetical list of excluded foods begins with the phrase "such as," meaning it is "illustrative, not exhaustive." *Bragdon v. Abbott*, 524 U.S. 624, 639 (1998). And like other dietetic foods and diabetic foods (the latter being "[f]oods that are specially formulated to be suitable for consumption by people with diabetes mellitus," David A. Bender, *A Dictionary of Food and Nutrition* 224 (3d ed. 2009)), Nutricia's medical foods are

specially formulated to meet the nutritional needs of people for whom a conventional diet is unsuitable. Nutricia's medical foods, being at least similar to note 1(a)'s illustrative examples, are thus excluded from heading 3004. Indeed, that is just what the Canadian International Trade Tribunal (whose decisions, though not binding, merit "respectful consideration," *Home Depot U.S.A., Inc. v. United States*, 915 F.3d 1374, 1379 n.1 (Fed. Cir. 2019)) concluded regarding Neocate. *Nutricia N. Am. v. President of the Can. Border Servs. Agency*, 2011 CarswellNat 7137, para. 96 (C.I.T.T.) (WL) ("[D]espite their acknowledged therapeutic effect, [infant and junior Neocate] are not medicaments but, rather, are in the nature of food preparations, which, as such, fall outside the scope of Chapter 30 by virtue of Note 1(a) to that chapter."), Appx4837–58.

As the trial court explained, this conclusion is bolstered by the non-binding yet instructive explanatory notes. Appx15–17. Explanatory note 30.04 provides that "[t]he provisions of the heading text do not apply to foodstuffs or beverages such as dietetic, diabetic or fortified foods …, which fall to be classified under their own appropriate headings." Appx4836 (emphasis omitted). "This is essentially the case as regards food preparations containing only nutritional substances": "proteins, carbohydrates and fats," as well as "[v]itamins and mineral salts [that] also play a part in nutrition." *Id.* Only if a food or beverage "merely serves as a support, vehicle or sweetening agent for the medicinal substances (e.g.,

in order to facilitate ingestion)" does the explanatory note suggest a product is classifiable under heading 3004. *Id.* Nutricia's medical foods undisputedly contain only nutritional substances—they contain no drugs or active ingredients, Appx18–19, 26, 175–76, 859, 1500, 1763, 1767, 1776, 4774—so the explanatory note confirms they are not products of heading 3004.

### B. Nutricia's Counterarguments—Which Ignore Note 1(a) To Chapter 30 And Misconstrue The HTSUS's Plain Text—Are Unpersuasive

Nutricia assails the trial court's conclusion that the medical foods in question do not fall under heading 3004 on a number of grounds, none of which is persuasive.

Nutricia first suggests that "[m]edicaments" are defined in heading 3004 itself as merely "articles 'consisting of mixed products for therapeutic use.'" Blue Br. at 30. But heading 3004 uses the word "[m]edicaments," not "articles." "[D]ictionaries consider the term 'medicament' synonymous with terms such as 'medicinal substance' and 'medication,'" Appx12, or "active ingredient," Loyd V. Allen, Jr. & Howard C. Ansel, *Ansel's Pharmaceutical Dosage Forms and Drug Delivery Systems* 763 (10th ed. 2014), Appx4809. Yet Nutricia's medical foods undisputedly lack medicinal substances, medications, or active ingredients. Appx18–19, 26, 175–76, 859, 1500, 1763, 1767, 1776, 4774.

In any event, even if "[m]edicaments" were broad enough in the abstract to

all sorts of articles, heading 3004 cannot be read in a vacuum. *See* GRI 1. Note 1(a) to chapter 30 would still exclude non-intravenous "dietetic" foods like Nutricia's from heading 3004—even though they are nutritional therapies covered by insurance, *see* Blue Br. at 35–43, and even if some nutrients like vitamins can in high quantities be pharmacologically active (though Nutricia never says which nutrient in its medical foods has such activity), *id.* at 47–50. Note 1(a) confirms that, for tariff purposes, purely nutritional preparations like Nutricia's, regardless of their therapeutic effect, are not "[m]edicaments."

On that note, Nutricia next chides the trial court for ostensibly "applying a chapter exclusionary note … before confirming" whether the medical foods were "*prima facie* classifiable under" heading 3004. Blue Br. at 44–45. Nutricia misunderstands GRI 1. The rule provides for the holistic consideration of the terms of the headings "and any relative section or chapter notes." The order of operations—headings first or notes first—thus does not matter. Even if Nutricia's medical foods met heading 3004's description of "[m]edicaments" at first glance, which they do not, note 1(a) is a statutory provision of equal footing, *Roche Vitamins*, 772 F.3d at 731, that prohibits their classification under any heading of chapter 30. *See, e.g.*, *Alcan Food Packaging (Shelbyville) v. United States*, 771 F.3d 1364, 1368 (Fed. Cir. 2014) (explaining that even if the importer were right

that a heading term were "broad enough to include" its merchandise, the importer's argument did "nothing to avoid" an exclusionary chapter note).

To support its contention that the order of operations somehow matters—really, that note 1(a) to chapter 30 should be ignored—Nutricia cites *Magid Glove & Safety Manufacturing Co. v. United States*, 87 F.4th 1352 (Fed. Cir. 2023), and *Sharp Microelectronics Technology, Inc. v. United States*, 122 F.3d 1446 (Fed. Cir. 1997). Blue Br. at 45. But neither case helps Nutricia. Although Nutricia quotes *Magid Glove* as stating that "a proper classification analysis starts with the terms of the headings," full stop, Blue Br. at 45, the quote actually continues, "*not the subheadings*." 87 F.4th at 1358 (emphasis added). *Magid Glove*, in other words, reaffirms that, in accordance with GRIs 1 and 6, classification cannot begin with an analysis of subheadings—a sin that the trial court never committed.

*Sharp* is also inapposite. There, this Court held that heading 9013, which at the time covered "[l]iquid crystal devices not constituting articles provided for more specifically in other headings," "invite[d] a relative specificity analysis" that precluded an exclusionary section note from being used as a "tie-breaker." 122 F.3d at 1450. But neither heading 2106 nor heading 3004 invites a relative-specificity analysis, like heading 9013 did by its terms. Neither asks whether a good described by the heading is "more specifically" provided for in a different heading. Nor is note 1(a) a "tie-breaker" between headings here—it eliminates

heading 3004 from consideration. *Sharp* does not, therefore, require the Court to ignore note 1(a) to chapter 30. *Kent Int'l, Inc. v. United States*, 393 F. Supp. 3d 1218, 1223–24 (Ct. Int'l Trade 2019).

The same goes for *Bauer Nike Hockey USA, Inc. v. United States*, *see* Blue Br. at 62, which similarly held that exclusionary notes cannot be applied when engaging in relative-specificity analysis under GRI 3(a). 393 F.3d 1246, 1252 & n.6 (Fed. Cir. 2004). GRI 3(a)'s rule of relative specificity, which requires a good falling under multiple headings to be classified under the heading providing "the most specific description," is inapplicable here because GRI 1 resolves the medical foods' classification. "[S]ubsequent [GRIs] are inapplicable if a preceding rule provides proper classification." *ADC Telecomms.*, 916 F.3d at 1017 (quotation omitted).

Moreover, *Bauer* involved mutually exclusive chapter notes that precluded goods of one chapter from being classified in the other. 393 F.3d at 1252 n.6. But here, there are no mutually exclusive notes at issue for the reasons the trial court gave, Appx26–29—reasons that Nutricia fails to address in its opening brief, *see* Blue Br. at 62. Although note 1(f) to chapter 21 excludes "products of heading … 3004" from classification under heading 2106, mandating an analysis under heading 3004, note 1(a) to chapter 30 does not similarly incorporate heading 2106 by reference. Instead, note 1(a) specifies particular foods—"dietetic" ones like

Nutricia's, foremost—for exclusion. The two notes thus do not recursively exclude products of one heading from the other, as was the case in *Bauer*. They are not, therefore, mutually exclusive. In short, note 1(a) is not an optional rule of thumb but rather binding statutory language that excludes Nutricia's medical foods from classification under heading 3004.

Thus, Nutricia's final line of defense is that note 1(a) to chapter 30 does not describe its foods; rather, it ostensibly describes only those foods that are "consumed as part of a normal diet[] alongside regular food products" rather than "in place of them." Blue Br. at 52–60. But nowhere does Nutricia explain how it divined this requirement from the definitions of "diet" and "dietetic" it cites, *id.* at 53–54 & n.13, all of which support the trial court's interpretation. *See* Appx17 (explaining that "specialized foods taken orally by persons with medical needs (including, for example, diabetics)" are within note 1(a)'s ambit). Indeed, as Nutricia explains, salmon would have to be classified as a "dietetic" or "diabetic" food of section IV under its interpretation of note 1(a)—a result that Nutricia admits is "absurd." Blue Br. at 59. Accordingly, Nutricia's medical foods, being nutritional formulations specially created for medical reasons, are "dietetic" or similar foods not classifiable as "[m]edicaments" of heading 3004.

**III.    The Trial Court Correctly Classified Nutricia's Medical Foods As "Food Preparations Not Elsewhere Specified Or Included" Of Heading 2106**

Because Nutricia's medical foods are not classifiable under heading 3004 (and because Nutricia has not identified any other candidate heading in chapters 1 through 97), the medical foods are properly classified as "[f]ood preparations not elsewhere specified or included" of heading 2106, just as the trial court concluded. Appx31–33.  Food preparations are substances specially made up for ingestion, *see Orlando Food Corp. v. United States*, 140 F.3d 1437, 1441 (Fed. Cir. 1998), which is what Nutricia's medical foods are.  Furthermore, they fall under subheading 2106.90.99 ("Other") for the reasons the trial court gave: no other subheading describes the medical foods.  Appx33–34.  Nutricia does not contend otherwise. *See generally* Blue Br.

Rather, Nutricia responds that its medical foods should instead be classified as "[m]edicaments" of heading 3004 either because they meet that heading's terms or because heading 3004 is the more specific provision.  Blue Br. at 60–65.  But as already explained, applying GRI 1, note 1(a) to chapter 30 excludes Nutricia's medical foods from classification under heading 3004 and directs their classification under section IV (which includes heading 2106).  Because the classification is determined pursuant to GRI 1, any subsequent GRIs, like GRI 3(a), that would mandate relative-specificity analysis, cannot be considered.  *ADC*

*Telecomms.*, 916 F.3d at 1017.  This Court should accordingly affirm the trial

court's judgment classifying the medical foods under subheading 2106.90.99.

**IV.    The Trial Court Correctly Held That Nutricia's Nutritionally "Therapeutic" Medical Foods Are Not Secondarily Classifiable As Non-Therapeutic "Articles" For The "Handicapped" Of Subheading 9817.00.96**

The trial court also correctly held that Nutricia's medical foods are not

secondarily classifiable as "[a]rticles specially designed or adapted for the use or

benefit of . . . physically or mentally handicapped persons" of subheading

9817.00.96.  Appx32–38.  Subheading 9817.00.96 is a special classification

provision implementing the Nairobi Protocol, a treaty that accords duty-free

treatment to certain articles designed for persons with disabilities.  *Sigvaris, Inc. v.*

*United States*, 899 F.3d 1308, 1310 n.1 (Fed. Cir. 2018).  Even if an article is

classified under a dutiable heading of chapters 1 through 97 of the HTSUS, that

article's secondary classification under subheading 9817.00.96 will entitle the good

to duty-free entry.  *Id.* at 1313 n.3.

But, as the trial court explained, "[n]othing in the terms of subheading

9817.00.96 … provides or even connotes that Congress … intended the scope of

the subheading to be so broad as to cover foods, food supplements, or nutritional

substances or ingredients of any type."  Appx37–38.  And, as explained below,

U.S. note 4(b)(iii) to subchapter XVII, chapter 98, excludes "therapeutic" goods

like Nutricia's from subheading 9817.00.96.  Nutricia's medical foods—used as

nutritional therapy for various disorders—are thus not described by subheading 9817.00.96. They are therefore classifiable only under heading 2106, as the trial court rightly concluded.

To begin, no "preparations," nutritional or medicinal, can be considered "[a]rticles" within the meaning of subheading 9817.00.96. The tariff term "articles," though "embrac[ing] commodities generally," has historically been used to distinguish manufactured objects from substances—for instance, to distinguish fully manufactured "articles" from the "materials" that they consist of. *ClearCorrect Operating, LLC v. Int'l Trade Comm'n*, 810 F.3d 1283, 1293 (Fed. Cir. 2015) (emphasis and quotation omitted). The HTSUS similarly distinguishes "articles" from "preparations," or substances specially prepared for consumptive use, *Orlando Food Corp.*, 140 F.3d at 1441. Heading 3808 is a prime example. It provides for "[i]nsecticides … put up … as *preparations or articles* …." Heading 3808 (emphasis added). "Preparations" are thus not "articles" under the HTSUS. *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1371 (Fed. Cir. 2013) ("When interpreting HTSUS provisions, we must strive to give effect to every word in the statutory text."). Indeed, the separation between the two infuses the HTSUS. "Preparations" are listed in headings in and before chapter 38, covering a variety of food and chemical substances. But "articles," with few exceptions, are found only in later headings describing objects manufactured from materials, like

plastic, wood, stone, textile, and metal.  The two terms thus describe mutually exclusive categories of goods.  Nutricia does not contest, however, that its medical foods constitute "preparations."

This understanding of "articles" as distinct from "preparations" carries forward to subheading 9817.00.96, as its text confirms.  The provision's description of "[a]rticles" as applied to "the blind" is limited to objects: publications "in raised print," "[b]raille tablets," and other "special apparatus." Subheadings 9817.00.92 and 9817.00.94.  Substances of any kind are omitted. Given that no "preparations" are included within subheadings 9817.00.92 and 9817.00.94's description of "[a]rticles," it would be strange to conclude that this same statutory "formulation" somehow does cover "preparations" when "called into play" by subheading 9817.00.96.  *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994); *see* Appx38 (pointing out this contradiction resulting from Nutricia's interpretation).  "Preparations" like Nutricia's, therefore, are not classifiable as "[a]rticles" of subheading 9817.00.96.

But even assuming that Nutricia's medical foods can be considered "[a]rticles" within the meaning of subheading 9817.00.96, they are "therapeutic" ones described by U.S. note 4(b)(iii).  U.S. note 4(b) provides that subheading 9817.00.96 does not cover "(i) articles for acute or transient disability; (ii) spectacles, dentures, and cosmetic articles for individuals not substantially

disabled; (iii) therapeutic and diagnostic articles; or (iv) medicine or drugs." As this Court has explained with respect to U.S. note 4(b)(iii)'s predecessor, the term "'therapeutic' has many different meanings and is subject to both broad and narrow interpretations." *Richards Med. Co. v. United States*, 910 F.2d 828, 830 (Fed. Cir. 1990). In this context, it describes "merchandise which is used to heal or cure the condition causing the handicap" rather than "compensate for, or help adapt to, the handicapped condition." *Id.* at 831. Thus, in *Richards Medical Co.*, this Court affirmed the trial court's factual finding that an imported prosthetic hip was a "compensatory remedy of a disability and not a therapy," and thus not a "therapeutic" article. *Id.* (quotation omitted), *aff'g Richards Med. Co. v. United States*, 720 F. Supp. 998, 1001 (Ct. Int'l Trade 1989) (explaining that a "therapeutic" article must at least seek to "lessen[] the disease which caused" a condition, rather than merely "relieve the discomfort of, or artificially compensate for" it).

Nutricia's medical foods are nutritional therapies, not compensatory remedies. As the trial court explained, it is undisputed "that the five products are 'indicated for use in the treatment of a variety of diseases, predominantly in very young children,' that 'in some instances they are the only, or primary, available treatment to ameliorate these severe and sometimes fatal conditions' and that '[m]edical professionals refer to the deployment of these products as 'nutritional

therapy,' thus confirming their therapeutic use and value." Appx35 (emphasis omitted). Nutricia's medical foods are thus "therapeutic"—they treat or lessen diseases through nutritional therapy, rather than relieve discomfort or artificially compensate for a disability like a prosthesis. They are accordingly excluded from subheading 9817.00.96 by U.S. note 4(b)(iii).

Nor are Nutricia's medical foods similar to the goods that were intended to be covered by the Nairobi Protocol. The Nairobi Protocol obligates contracting states to exempt from duty "articles specially designed for the educational, scientific or cultural advancement of the blind and other physically or mentally handicapped persons …." Protocol to the Agreement on the Importation of Educational, Scientific and Cultural Materials, art. II, ¶ 3(a)(f)(ii), *opened for signature* Mar. 1, 1977, 1259 U.N.T.S. 3. As the United Nations organization that drafted the Nairobi Protocol explained, this might include items like "[p]rosthetic and orthotic appliances," "[t]echnical aids," "[w]heelchairs," "[c]ommunications devices," "[s]pecial equipment," and "[r]aw materials required for the manufacture of" these items. United Nations Educational, Scientific and Cultural Organization, *A guide to the operation of the 'Florence Agreement' and its Protocol* at 8, 25–26 (1978), https://unesdoc.unesco.org/ark:/48223/pf0000059329. Nutritional therapies do not fall within that list, confirming that Nutricia's medical foods were

never intended to be covered by the Nairobi Protocol and, by extension, subheading 9817.00.96.

Nutricia's counterarguments here are brief and unpersuasive. Nutricia claims that the legislative history supports its liberal construction of subheading 9817.00.96, Blue Br. at 68–69, but the Senate report that Nutricia cites—which this Court described as "not very helpful," *Richards Med. Co.*, 910 F.2d at 830—simply confirms that Congress intended the provision to implement the Nairobi Protocol and cover adaptive equipment like special car seats and attachments. Nowhere in that legislative history is it suggested that therapies, nutritional or otherwise, were intended to be encompassed within the subheading. That Congress excluded not only "therapeutic … articles" but also "medicine" and "drugs" from subheading 9817.00.96 confirms this conclusion. U.S. note 4(b)(iii) and (iv), subchapter XVII, chapter 98. And the text of the statute controls over any atextual interpretations that might be proposed based on unhelpful legislative history. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005).

Whether the trial court properly understood Nutricia's argument as to subheading 9817.00.96 and the scope of the term "handicapped," Blue Br. at 66–68, is also beside the point. The trial court's judgment excluded Nutricia's medical foods from classification under subheading 9817.00.96. That judgment is what this Court reviews. *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1556 (Fed.

Cir. 1985). Precisely how the trial court formulated its opinion does not impact its bottom-line conclusion that Nutricia's medical foods are not classifiable under subheading 9817.00.96.

Finally, Nutricia suggests that its medical foods can never be "therapeutic" because some of the diseases for which Nutricia's medical foods are formulated are incurable, Blue Br. at 69–71, but this misses the mark. If an article constitutes "a therapy" for a condition, rather than merely an adaptive or "compensatory remedy of a disability," then it is "therapeutic." *Richards Med. Co.*, 910 F.2d at 831 (quotation omitted); *see* Blue Br. at 69 (acknowledging that a "therapeutic" article can "'heal' *or* 'cure'" (quotation omitted) (emphasis added)); *see also Therapeutic*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/therapeutic ("of or relating to the treatment of disease or disorders by remedial agents or methods **:** CURATIVE, MEDICINAL[; *e.g.*,] *therapeutic* diets"). A condition's incurability may in some cases be an indication that an article is compensatory rather than therapeutic, as it was in *Richards Medical Co.*, 720 F. Supp. at 1001 (likening a surgically implanted prosthetic hip to an advanced form of an external prosthesis). But here, there is no dispute that the medical foods are used in nutritional therapy to treat even drug-resistant conditions like intractable epilepsy. Appx181–83, 187–88, 196–200. That Nutricia's medical foods do not "cure" thus does not render them non-therapeutic—just as a drug that

treats a condition without curing it.  *See* U.S. note 4(b)(iv) to subchapter XVII, chapter 98 (excluding "medicine or drugs" from subheading 9817.00.96).

Nutricia's nutritionally therapeutic medical foods are thus excluded from subheading 9817.00.96, and are, as the trial court correctly held, classifiable under heading 2106 alone.

## CONCLUSION

For these reasons, we respectfully request that the Court affirm the trial court's judgment.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

By:   /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

*Of Counsel:*        /s/ Luke Mathers
YELENA SLEPAK      LUKE MATHERS
Office of Assistant Chief Counsel     Trial Attorney
U.S. Customs and Border Protection   Civil Division, Dept. of Justice
New York, New York        Commercial Litigation Branch
                                  26 Federal Plaza, Room 346
                                  New York, New York 10278
                                  Tel. No. (212) 264-9236
Dated:  July 19, 2024       *Attorneys for Defendant-Appellee*

# FEDERAL RULE OF APPELLATE PROCEDURE 28(F) ADDENDUM

**Heading 2106, HTSUS (2014):**

Food preparations not elsewhere specified or included[.]

**Note 1(f) to Chapter 21, HTSUS (2014):**

This chapter does not cover … [y]east put up as a medicament or other products of heading 3003 or 3004[.]

**Heading 3004, HTSUS (2014):**

Medicaments (excluding goods of heading 3002, 3005 or 3006) consisting of mixed or unmixed products for therapeutic or prophylactic uses, put up in measured doses (including those in the form of transdermal administration systems) or in forms or packings for retail sale[.]

**Note 1(a) to Chapter 30, HTSUS (2014):**

This chapter does not cover … [f]oods or beverages (such as dietetic, diabetic or fortified foods, food supplements, tonic beverages and mineral waters), other than nutritional preparations for intravenous administration (section IV)[.]

**Subheading 9817.00.96, HTSUS (2014):**

Articles specially designed or adapted for the use or benefit of the blind or other physically or mentally handicapped persons; parts and accessories (except parts and accessories of braces and artificial limb prosthetics) that are specially designed or adapted for use in the foregoing articles: Other.

**U.S. Note 4(b) to Subchapter XVII, Chapter 98, HTSUS (2014):**

Subheadings 9817.00.92, 9817.00.94 and 9817.00.96 do not cover -- (i) articles for acute or transient disability; (ii) spectacles, dentures, and cosmetic articles for individuals not substantially disabled; (iii) therapeutic and diagnostic articles; or (iv) medicine or drugs.