No. 24-1436

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

NUTRICIA NORTH AMERICA, INC.,
*Plaintiff-Appellant,*

v.

UNITED STATES,
*Defendant-Appellee,*

On Appeal from the United States Court of International Trade,
No. 1:16-cv-00008, Judge Timothy C. Stanceu

## REPLY OF PLAINTIFF-APPELLANT
## NUTRICIA NORTH AMERICA, INC.

John Brew
Amanda Shafer Berman
Alexander H. Schaefer
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
Phone: (202) 624-2500
Fax: (202) 628-5116
jbrew@crowell.com

September 18, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2024-1436

**Short Case Caption** Nutricia North America, Inc. v. US

**Filing Party/Entity** Nutricia North America, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/20/2024

Signature: /s/ John Brew

Name: John Brew

| **1. Represented Entities.**<br>Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.**<br>Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.**<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Nutricia North America, Inc. | | Danone North America PBC |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable           ☐   Additional pages attached

| | | |
|---|---|---|
| Alexander T. Rosen | Maria T. Vanikiotis | |
| Frances Pierson Hadfield | | |
| Hea Jin Koh | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable           ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................ 1

ARGUMENT ............................................................................. 4

I.   Nutricia's Medical Foods are "medicaments" used to
     treat life-threatening diseases in infants and children,
     and thus covered by heading 3004. ................................. 4

II.  The Medical Foods are not excluded from heading 3004
     by Note 1(a) to Chapter 30. .......................................... 15

     A.   Nutricia's Medical Foods are not "dietetic" foods
          or their like. ......................................................... 16

     B.   The Medical Foods are not classifiable in Section
          IV, as required for Note 1(a) to apply. ................ 22

III. The Medical Foods cannot be classified under heading
     2106 as "Food preparations not elsewhere specified or
     included" because they are specifically included under
     heading 3004 ........................................................... 25

IV.  Subheading 9817.00.96, addressing products designed
     for use by handicapped persons, also applies. ............... 29

CONCLUSION ........................................................................ 34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bauer Nike Hockey USA, Inc. v. United States,*
    393 F.3d 1246 (Fed. Cir. 2004) .......................................... 26, 27, 28, 29

*ClearCorrect Operating, LLC v. ITC,*
    810 F.3d 1283 (Fed. Cir. 2015) ............................................................. 33

*Cummins Inc. v. United States,*
    454 F.3d 1361 (Fed. Cir. 2006) ............................................................. 21

*G. Hirsch's Sons v. United States,*
    167 F. 309 (2d Cir. 1909) ....................................................................... 32

*GRK Canada, Ltd. v. United States,*
    885 F.3d 1340 (Fed. Cir. 2018) ............................................................... 9

*Hanser v. McDonough,*
    56 F.4th 967 (Fed. Cir. 2022) ............................................................... 22

*Intercontinental Marble Corp. v. United States,*
    27 C.I.T. 654, 659, *judgment entered,* 27 C.I.T. 819 (2003),
    *aff'd,* 381 F.3d 1169 (Fed. Cir. 2004) ................................................. 10

*Lemans Corp. v. United States,*
    660 F.3d 1311 (Fed. Cir. 2011) ............................................................. 26

*Magid Glove Safety Mfg. Co. v. United States,*
    87 F.4th 1352 (Fed. Cir. 2023) ............................................................. 13

*Orlando Food Corp. v. United States,*
    140 F.3d 1437 (Fed. Cir. 1998) ............................................................. 33

*R.T. Foods, Inc. v. United States,*
    757 F.3d 1349 (Fed. Cir. 2014) ............................................................. 28

*Richards Med. Co. v. United States,*
    910 F.2d 828 (Fed. Cir. 1990) ............................................................... 31

*Sharp Microelectronics Tech., Inc. v. United States,*
    122 F.3d 1446 (Fed. Cir. 1997) ........................................ 14, 26, 27, 28

*Sports Graphics, Inc. v. United States,*
    24 F.3d 1390 (Fed. Cir. 1994) ............................................................ 16

*United States v. A. Johnson & Co.,*
    588 F.2d 297 (C.C.P.A. 1978) ............................................................ 32

*United States v. Alltransport, Inc.,*
    44 C.C.P.A. 149 (1957) ................................................................. 9, 12

*United States v. Carborundum Co.,*
    536 F.2d 373 (C.C.P.A. 1976) ............................................................ 24

*V. G. Nahrgang v. United States,*
    51 C.C.P.A. 76 (1964) ....................................................................... 30

*Warner-Lambert Co. v. United States,*
    425 F.3d 1381 (Fed. Cir. 2005) ............................................................ 7

## Statutes

21 U.S.C. § 360ee(b)(3) ......................................................................... 5, 17

## Regulations

21 C.F.R. § 101.9(j)(8) .................................................................. 5, 14, 16, 17

## Harmonized Tariff Schedule of the United States

General Rules of Intepretation:
    General Rule of Interpretation 1 ........................................................... 3
    General Rule of Interpretation 3 ........................................................... 3
    General Rule of Interpretation 3(a) ..................................................... 28

Additional Rules of Interpretation
    Additional Rule of Interpretation 1(a) ................................................ 24

Chapter 21:
    Note 1(f) ............................................................... 3, 25, 27, 28
    Heading 2106 ........................................................................ *passim*

Section VI:
    Note 2 ........................................................................... 25, 28

Chapter 30
    Note 1(a) ........................................................................ *passim*
    Heading 3004 ................................................................ *passim*

Chapter 98
    U.S. Note 4(b)(iii) to Subchapter XVIII ............................. 31
    Subheading 9817.00.96 ................................................ *passim*

## Other Authorities

Case C-267/13 *Nutricia NV v Staatssecretaris van Financiën*,
    2014 EU:C:2014:277 ........................................................... 11

Loyd V. Allen, Jr. & Howard C. Ansel, *Ansel's*
    *Pharmaceutical Dosage Forms and Drug Delivery Systems*
    763 (10th ed. 2014) .............................................................. 9

*Nutricia N. Am. v. President of the Can. Border Servs.*
    *Agency*,
    2011 CarswellNat 7137 (C.I.T.T.) ....................................... 21

U.S. Food & Drug Admin. Ctr. for Food Safety & Applied
    Nutrition, *Frequently Asked Questions About Medical*
    *Foods: Guidance for Industry* (3d ed. Mar. 2023) ............. 7, 8

World Customs Organization's Explanatory Note 30.03
    (2012) ................................................................................ 19

World Customs Organization's Explanatory Note 30.04
    (2012) ................................................................................ 19

## INTRODUCTION

Nutricia North America, Inc. ("Nutricia") submits this reply in support of its appeal of the U.S. Customs and Border Protection's ("Customs'" or "CBP's") determination that four specific products manufactured by Nutricia—all Medical Foods prescribed by doctors to treat rare, life-threatening diseases in infants and children—are classified under a HTSUS basket provision for "[f]ood preparations not elsewhere specified or included" (heading 2106).

As Nutricia explained in its opening brief ("Op. Br."), these Medical Foods should be classified under heading 3004, the HTSUS provision addressing for "[m]edicaments … consisting of mixed or unmixed products for therapeutic . . . uses." And they should be secondarily classified under subheading 9817.00.96, which provides duty-free treatment for "[a]rticles specially designed or adapted for the use or benefit of . . . handicapped persons." It is hard to believe that Congress intended life-saving medical products, which the Government admits are often the sole treatment for rare childhood diseases, to be subject to significant tariffs rather than the duty-free treatment accorded to other medicaments and items designed for disabled children.

In response, CBP invokes the maxim "let thy food be thy medicine" (Gov. Br. 1), but persistently denies what the ancient Greeks recognized: that certain foods are used as medicine. In any event, what matters for purposes of classification as a "medicament" under HTSUS heading 3004 is whether the substance *is used to treat a disease or illness*—and it is undisputed that these Medical Foods are used to treat specific rare diseases and illnesses in infants and children. They thus easily fall within the terms of heading 3004 as "medicaments . . . for therapeutic uses." CBP essentially admits this in its discussion of those terms.

Implicitly recognizing that the Medical Foods meet the terms of heading 3004, CBP spends most of its brief arguing that they are excluded from that heading by Note 1(a) to Chapter 30. There are several fundamental flaws in its arguments on this front.

*First*, CBP tries to redefine the term "dietetic" to cover all food-related products, including the Medical Foods. But dietetic has a narrower meaning as used in Note 1(a), as the surrounding terms indicate. And CBP's own definition of that term does not apply to the Medical Foods because they are not foods adapted for use in a special diet, but rather are specially manufactured substances that are used to

treat specific diseases, that do not occur in nature, and that replace a normal diet. As a matter of law, the Medical Foods cannot be modifications of a normal diet.

*Second*, CBP misreads the parenthetical at the end of Note 1(a), which requires that a product be classifiable in Section IV to be excluded from Chapter 30. The Medical Foods are not classifiable in Section IV.

*Third*, CBP ignores other relevant notes that preclude classification under heading 2106, including Chapter 21, Note 1(f), which excludes goods classifiable under heading 3004. As this Court has routinely found, when there are competing notes, classification is determined based on the terms of the headings. And if, as here, the terms of the competing headings require a relative specificity analysis, then classification is determined pursuant to such an analysis under General Rule of Interpretation ("GRI") 1 or GRI 3. As there is no dispute that heading 3004 is more specific than the heading 2106 residual basket provision, the Medical Foods cannot be classified under heading 2106.

CBP also insists that subheading 9817.00.96, covering products designed for use by handicapped persons, does not secondarily cover the Medical Foods even though children who rely on these Medical Foods are

3

disabled. That ignores both the text of that provision and Congress's intent that it applies broadly. CBP admits that "therapeutic" has a particular, narrower definition as used in subheading 9817.00.96 (*i.e.*, to cure or heal), but then attempts vainly to argue that Medical Foods meet that definition when they plainly do not. CBP's arguments that Medical Foods are not "articles" under 9817.00.96 is equally flawed because it is predicated on an impermissibly narrow construction of that general term used throughout the HTSUS to refer to a broad range of products.

This Court should reverse the decision below and hold that the Medical Foods are classified under heading 3004 and/or subheading 9817.00.96—and that these life-saving products are entitled to the same duty-free treatment as other essential medical products.

## ARGUMENT

### I.    Nutricia's Medical Foods are "medicaments" used to treat life-threatening diseases in infants and children, and thus covered by heading 3004.

Nutricia's Medical Foods readily qualify as "medicaments . . . for therapeutic or prophylactic uses" as described in HTSUS heading 3004.[1]

---

[1] Heading 3004 provides for "[m]edicaments (excluding goods of heading 3002, 3005 or 3006) consisting of mixed or unmixed products for therapeutic or prophylactic uses[.]" HTSUS, Heading 3004 (2014).

The Government barely even tries to argue to the contrary. In fact, that the Medical Foods are "medicaments . . . for therapeutic use" is apparent from the first paragraph of the Government's Statement of Case.

The Government first quotes a statutory definition of Medical Foods: "A medical food is 'a food which is formulated to be consumed or administered enterally *under the supervision of a physician* and which is *intended for the specific dietary management of a disease or condition* for which distinctive nutritional requirements, based on recognized scientific principles, are established by medical evaluation.'" Gov Br. 3 (quoting 21 U.S.C. § 360ee(b)(3)) (emphasis added). The Government then acknowledges that a Medical Food "'is a specially formulated and processed product (as opposed to a naturally occurring foodstuff used in its natural state) *for the partial or exclusive feeding of a patient'* with *'special medically determined nutrient requirements*, the dietary management of which cannot be achieved by the modification of the normal diet alone.'" Gov. Br. 4 (quoting 21 C.F.R. § 101.9(j)(8)) (emphasis added). The Government thus admits at the outset the therapeutic nature of the Medical Foods, and that they are medical products used

under the direction of medical providers. They are thus "medicaments" under any standard definition of that broad term.

The statutory and regulatory definitions provided by the Government undoubtedly describe Nutricia's Medical Foods. As Nutricia has explained, MSUD Lophlex® LQ, Periflex® Infant, Periflex® Junior, Ketocal® Liquid, and Neocate® Junior are each used to treat specific rare metabolic disorders, neurological diseases, and gastrointestinal disorders and diseases requiring nutritional therapy. Op. Br. 9-15; Appx590. They are designed, produced, marketed, prescribed by medical practitioners, and sold to treat infants and children in order to treat these unique diseases and disorders where other medications, alteration of diet, and consumption of conventional foods are ineffective or impossible. Op. Br. 8-9; Appx169.

CBP also admits that Nutricia's Medical Foods are often the only treatment for young children with "severe and sometimes fatal conditions." Gov. Br. 7 (quoting Appx35). And the Government has effectively conceded that Nutricia's Medical Foods are designed for therapeutic uses, admitting: "because … medical foods are used in nutritional therapy to treat diseases, they are 'therapeutic' articles[.]"

Appx4924; see also Appx4745 ("Nutricia's medical foods are therefore therapeutic articles[.]"). That concession eliminates any doubt as to the nature and use of Nutricia's Medical Foods as medicaments as described by heading 3004.[2] *See also Warner-Lambert Co. v. United States*, 425 F.3d 1381, 1385 (Fed. Cir. 2005) (medicaments under heading 3004 are "described by their use 'for therapeutic or prophylactic' purposes").

Trying to avoid the obvious implication of its own definition of "Medical Foods"—which begs the question of how a product that is used as a medicament somehow cannot be classified under a use provision for medicaments —the Government attempts to sidestep the statutory terms. For example, rather than grappling meaningfully with the term "medicaments," the Government instead asserts that Medical Foods are not "drugs." *See* Gov. Br. 3-4 (citing U.S. Food & Drug Admin. ("FDA"), Ctr. for Food Safety & Applied Nutrition, *Frequently Asked Questions About Medical Foods: Guidance for Industry* at 5 (3d ed. Mar. 2023), https://www.fda.gov/media/97726/download). To begin, the FDA's FAQs

---

[2] The Government does not contest that the products meet the other requirements of heading 3004. *See* Op. Br. 29. The products are "put up in measured doses (including those in the form of transdermal administration systems) or in forms or packings for retail sale."

do not ask *whether* Medical Foods are drugs, but rather clarify that Medical Foods are not "subject to regulatory requirements that specifically apply to drugs." *Id.* As Appellant explained (Op. Br. 5-7), the four Medical Foods here meet the definition of "drug" by statute, but were exempted from FDA drug regulations in order to ensure that they are easily available to the patients that need them.

But ultimately, whether the Medical Foods also qualify as "drugs" is irrelevant because, in heading 3004, Congress deliberately chose to use the broader term "medicament." Had Congress intended to limit products classified under heading 3004 to "drugs" it would have used that term.[3] The fact that some medicaments are "drugs" does not mean that only substances that also qualify as "drugs" can be as medicaments any more than that some dogs are poodles means that only poodles qualify as dogs.

The Government next attempts to replace the commonly accepted definition of medicament with a narrow definition that is inconsistent with the plain text of heading 3004. Specifically, the Government urges

---

[3] The term "drug" appears in the HTSUS in over fifty individual tariff provisions – all of which fall within chapter 29 (Organic chemicals). *See* HTSUS, Chapter 29 (2014). Thus, Congress was quite familiar with the term "drugs," but declined to use it in crafting heading 3004.

the Court to hold that a medicament must contain "medicinal substances," "medications," or "active ingredients." Gov. Br. 16. In support, the Government points to Allen & Ansel's "Pharmaceutical Dosage Forms and Drug Delivery Systems," which it characterizes as indicating that "medicament" is just another word for "medicine" or "active ingredient." *Id.* (citing Loyd V. Allen, Jr. & Howard C. Ansel, *Ansel's Pharmaceutical Dosage Forms and Drug Delivery Systems* 763 (10th ed. 2014), Appx4809). This is wrong for several reasons.

*First*, the Court should reject this argument because the Government cites one technical publication expressly intended for pharmacy students as its sole source for this narrow, outlier definition of medicament. And this definition runs counter to multiple dictionary and common-sense definitions of "medicament," as well as judicial precedent,[4] all of which define the term based on its "use" to treat diseases, not whether they contain "active ingredients."[5] *See GRK Canada, Ltd. v.*

---

[4] *See, e.g., United States v. Alltransport, Inc.*, 44 C.C.P.A. 149, 152 (1957) (A product is medicinal if it is "of use . . . in curing *or* alleviating, or palliating or preventing, some disease or affection of the human frame") (emphasis added, citation omitted).

[5] Op. Br. 31-32.

*United States*, 885 F.3d 1340, 1347 (Fed. Cir. 2018) (rejecting government's definition of "other wood screws," which was only supported by one dictionary definition, and requiring an examination of a product's "use" to confirm classification).

Second, *Ansel's* does not actually define the term "medicament," but only lists that term as one possible synonym for "active ingredient." *See Ansel's Pharmaceutical Dosage Forms and Drug Delivery Systems* at 763 ("Active Ingredient: the ingredient or ingredients of a pharmaceutical product responsible for its pharmacologic activity (also medicament, drug substance, active pharmaceutical ingredient [API])").[6] This reference to "medicament" as but one item in a list of synonyms—each of which could plainly *also* have a different meaning than "active ingredient" depending on the context—cannot displace the more common and commercial definition of the term "medicament" as used in heading 3004. *See Intercontinental Marble Corp. v. United States*, 27 C.I.T. 654, 659,

---

[6] Interestingly, the Government fails to mention that the same source defines "drug" as "an agent intended for use in the diagnosis, mitigation, treatment, cure, or prevention of disease in humans or in other animals" and goes on to explain that a drug "can replenish a body deficient in antibodies, vitamins, hormones, electrolytes, protein, enzymes, or blood." *Ansel's Pharmaceutical Dosage Forms and Drug Delivery Systems* at 2-3.

*judgment entered*, 27 C.I.T. 819 (2003), and *aff'd*, 381 F.3d 1169 (Fed. Cir. 2004) (rejecting geological definition of "marble" in favor of common commercial meaning of term).

As Nutricia has explained (Op. Br. 29-35), the term "medicament" is broadly defined in dictionaries and less specialized medical treatises as "a substance used in therapy"[7] or "for medical treatment."[8] This commonly accepted definition of "medicament" aligns with a century of precedent,[9] and the term *as already defined in heading 3004 itself*, which specifies that the therapeutic use of the product is what makes it a "medicament" within the terms of heading 3004. The Court should reject the Government's attempt to redefine this term.

---

[7]*Medicament*, Merriam-Webster Online Dictionary https://www.merriam-webster.com/dictionary/medicament.

[8] *Medicament*, Oxford English Dictionary ("a substance used for medical treatment; a medicine, remedy"), https://www.oed.com/search/dictionary/?q=medicament; *Medicament*, Stedman's Medical Dictionary (24th ed.) ("a medicine . . . a remedy").

[9] *See* Op. Br. 30-33. And while not binding here, the Court of Justice of the European Union (CJEU) found that five liquid food preparations intended to be administered under medical supervision to control or prevent malnutrition were 'medicaments' within the meaning of CN tariff heading 3004. *See* Case C-267/13 *Nutricia NV v Staatssecretaris van Financiën*, 2014 EU:C:2014:277. The CJEU noted that the products were "intended to be used in the prevention or treatment of a disease or ailment and that they are clearly intended for medical use." *Id.* ¶ 24.

But even if the Court were to accept the Governments' alternative definition of "medicament" as requiring that the substance be or include an "active ingredient," the Government still loses the point because Nutricia's Medical Foods meet that definition. The Government does not attempt to define the key terms from its suggested new definition of "medicament" (*i.e.*, "medicinal substances," "medications," or "active ingredients"), and appears to take for granted that a definition of medicament that requires showing that a substance includes such elements would *per se* exclude Nutricia's Medical Foods. But as Nutricia explained, the chemically synthesized, pharmaceutical grade, individual amino acids in Nutricia's Medical Foods *are* "active ingredients." Op. Br. 38-39; Appx184-Appx188. And the Medical Foods qualify as "medicinal substances" or even "medicines" as easily as they qualify as "medicaments" given that—as the Government admits (*e.g.*, Gov. Br. 3-4)—they are often the sole method of treating rare life-threatening diseases and medical conditions in infants and children. *See Alltransport, Inc.*, 44 C.C.P.A. at 152 (A product is medicinal if it is "of use . . . in curing *or* alleviating, or palliating or preventing, some disease or affection of the human frame") (emphasis added, citation omitted).

Notably, the Government devotes relatively little space in its brief to arguing that Nutricia's Medical Foods are not medicaments, instead pivoting almost immediately to its argument that the Medical Foods are excluded from classification in heading 3004 based on Note 1(a) to Chapter 30. *See* Gov. Br. 12. As Nutricia explains below, the Government's arguments to that end are flawed in several ways. But the Government's analysis is also flawed structurally in that it skips the first step in any classification analysis. Under GRI 1, the first step is to confirm whether a good meets the term of a heading, *then* determine if there are any "relative" chapter notes. *Magid Glove Safety Mfg. Co. v. United States*, 87 F.4th 1352, 1358-59 (Fed. Cir. 2023) ("[A] proper classification analysis starts with the terms of the headings . . . And as instructed by GRI 1, we then consider pertinent notes that inform or limit the scope of [a heading]."). The Government attempts to distinguish *Magid* on the basis that, there, this Court rejected the idea that subheadings can expand the plain meaning of the terms of a heading. Gov. Br. 18. But the Court emphasized, in no uncertain terms, "GRI 1's instruction to start a proper classification analysis by focusing on the language of the headings." 87 F.4th at 1360.

Nutricia does not dispute that both heading and relative chapter notes must be considered under GRI 1, but it is simply common sense—and consistent with the textual order that they are referenced within that GRI—that the analysis must begin with the heading, and *only then* move to consideration of any relative chapter notes. The Government insists that the "order of operations . . . does not matter." Gov. Br. 17. However, it is "error [to] employ[] Note 1[a] as an analytical tool before one first decides if an article is classifiable under heading [3004]." *Sharp Microelectronics Tech., Inc. v. United States*, 122 F.3d 1446, 1450 (Fed. Cir. 1997); *see also infra* at 26-28.

Any common-sense textual analysis of heading 3004 must recognize that its key terms — "[m]edicaments … consisting of mixed or unmixed products for therapeutic … use"—apply to and describe the Medical Foods. And even if that were not obvious, it is confirmed by the Government's own regulatory definition of Medical Foods as "specially formulated and processed product[s]" used by "patients" under medical supervision for "management of the unique nutrient needs that result from [a] specific disease or condition[.]" 21 C.F.R. § 101.9(j)(8). The Government's reasoning fails at the outset by refusing to admit that

14

Nutricia's Medical Foods are "medicaments" within the meaning of heading 3004, and its subsequent arguments—and the decision below—must fall like dominoes in no small part as a result of that fatal flaw.

## II. The Medical Foods are not excluded from heading 3004 by Note 1(a) to Chapter 30.

The Government puts most of its eggs in one basket: its argument that the Medical Foods are excluded from heading 3004 pursuant to Note 1(a) to Chapter 30. But again, the government ignores much of the text of that provision, which provides in full:

> Foods or beverages (such as dietetic, diabetic or fortified foods, food supplements, tonic beverages and mineral waters), other than nutritional preparations for intravenous administration (Section IV).

The Government errs in many ways, including by failing to acknowledge the import of the limiting parenthetical at the end of that Note, which requires that a product be classifiable under Section IV to be excluded from Section 30. And the one word that underpins most of the Government's argument—"dietetic"—does not mean what the Government insists it means. But even applying the Government's definition of that term, Medical Foods are not "dietetic" "[f]oods or beverages" because they are not foods or beverages adapted for use as

part of a special diet; rather, they are specially manufactured, non-naturally occurring substances that mostly or fully replace a normal diet. *See* Appx188-Appx202; *see also* 21 C.F.R. § 101.9(j)(8).

### A. Nutricia's Medical Foods are not "dietetic" foods or their like.

As Nutricia explained (Op. Br. 53), the rule of *ejusdem generis* provides that where a general word or phrase (here, dietetic) is paired with an "enumeration of specific things" (here, diabetic or fortified foods, food supplements, tonic beverages and mineral waters), "the general word or phrase is held to refer to things of the same kind as those specified." *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1392 (Fed. Cir. 1994). In other words, "dietetic" foods within the meaning of Note 1(a) must be similar to, or in the same class as, "diabetic" or "fortified" foods, food supplements, etc. All of these exemplars are food products that may be used to complement a person's typical diet for general health and well-being, or as part of an avoidance or fortification diet. Nutricia's Medical foods, in contrast, serve a very different purpose. *See* Op. Br. 52-57. Thus, they are not products "such as" the dietetic, diabetic, and supplemental food products listed in Note 1(a).

Ignoring the terms surrounding "dietetic" in Note 1(a), the Government relies on a dictionary definition of "dietetic" as foods that are "adapted for use in special diets." Gov. Br. 13-14 (citing *Dietetic*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/dietetic). This definition does not help the Government's cause because it *does not apply* to the Medical Foods.

The Government's definition of "dietetic" refers to a food that is "adapted" for use as part of a "special diet"—*i.e.*, a modification or avoidance diet—such as fat-free milk for those seeking to lose weight, or sugar-free food products recommended to help control diabetes. The subject Medical Foods, in contrast, are not foods "adapted" to use as part of a "special diet," but rather substances used as the primary method of treating life-threatening disease; they replace a normal diet and cannot be part of a modification diet. *See* 21 U.S.C. § 360ee(b)(3); 21 C.F.R. § 101.9(j)(8); *see also* Appx188-Appx202. The Government admits this, and even quotes the regulatory definition of Medical Foods as "specially formulated and processed product[s] (as opposed to a naturally occurring foodstuff . . .)" to manage medical conditions that "cannot be [addressed] by the modification of the normal diet alone." Gov. Br. 14 (quoting 21

C.F.R. § 101.9(j)(8)). But its subsequent assertion that this regulatory definition "fits the plain meaning of dietetic" (*id.*) entirely misses the mark. Regular foods "adapted for use in special diets" (*id.* at 13) are the exact opposite of these Medical Foods, which are specially formulated, not based on naturally occurring foods, and replace a normal diet. *See* Op. Br. 52-56. Nutricia's Medical Foods are thus not "adapted" for use in a "special diet," and cannot be considered foods "such as" dietetic even if one accepted the Government's proposed definition of that term—which itself ignores the more limited and specific nature of the surrounding terms in Note 1(a) such as "diabetic," "fortified," and "supplements."

The Government attempts to buttress its broad interpretation of "dietetic" to cover all Medical Foods by referring to the World Customs Organization's Explanatory Notes ("ENs") to Chapter 30. Gov. Br. 15. But EN 30.04, on which the Government relies, tautologically instructs that the heading does not apply to dietetic, diabetic, or fortified foods—which does not answer the question of whether Nutricia's Medical Foods are dietetic—and then clarifies that where a food serves as a "vehicle" for "medicinal substances" then it is classifiable under heading 3004. That is precisely what the Medical Foods do; they deliver particular, life-saving

combinations of amino acids to patients who must ingest them to survive. Op. Br. 9-15. The ENs confirm that foods and beverages remain classified in Chapter 30 if they are indicated for use in the prevention of any disease, but are excluded from Chapter 30 if they are "solely to ensure a better dietetic balance to increase the energy-giving or nutritional value of the product or to improve its flavor[.]" EN 30.03 (2012). That is not the nature of these Medical Foods; as the Government admits, they are not added to a normal diet for better balance, nor are they products added to normal foods or beverages to improve flavor or increase energy (such as, for example, electrolytes added to fruit-drinks). Rather, the four specific Medical Foods are intended to treat specific rare diseases and replace a normal diet.[10] *See* Appx188-Appx202.

Further, the notion that a dietetic food is a food "adapted for" use in a special diet implies that, unlike the Medical Foods, such foods are

---

[10] The Explanatory Notes to Chapter 30 further clarify that "food supplements containing vitamins or mineral salts which are put up for the purpose of maintaining health or well-being *but have no indication as to use for the prevention or treatment of any disease or ailment*" also are *not* classified in that Chapter. EN 30.04 (2012) (emphasis added). Again, that does not describe the Medical Foods, which the Government admits are used to treat diseases and ailments.

19

*not* specially designed for that use—let alone used as the sole or primary method of treating rare diseases. Rather, dietetic foods are normal foods that *can* be adapted for use in a special diet because they have certain qualities (*i.e.*, low sugar or salt)—but also can be eaten as part of a normal diet.[11] The Medical Foods at issue here cannot. Nutricia's Medical Foods mostly or fully replace a conventional diet because children with the rare diseases which require being prescribed Nutricia's Medical Foods cannot tolerate normal foods. Op. Br. 55-56; Appx188-Appx202. In fact, consumption of certain of the Medical Foods by healthy persons without medical supervision may cause harm or illness, including malnutrition. *Id.*; *see e.g.*, Appx189, Appx202.

Thus, Nutricia's Medical Foods are not "dietetic" even under the Government's definition of that term. Nor can they be considered "at least similar" to dietetic, diabetic, or supplemental foods (Gov. Br. 15), given that the Medical Foods are specially manufactured solely for use by

---

[11] *Dietetic*, https://www.merriam-webster.com/dictionary/dietetic ("of or relating to diet"); *Diet*, https://www.merriam-webster.com/dictionary/diet ("food and drink regularly provided or consumed", and "the kind and amount of food prescribed for a person or animal for a special reason", and "a regimen of eating and drinking sparingly so as to reduce one's weight").

infants and children to prevent rare diseases and replace a normal diet.[12]
The Medical Foods used to treat rare diseases are not of the same class
or kind as those listed in Note 1(a), and the Government is wrong to
rewrite its text to try to convert a list of specific types of foods beginning
with "such as" to a broad, catch-all category of products that have to do
with "diet." Heading 3004 defines its application based on the use of the
product at issue—it is used for therapeutic purposes—and so the
exclusionary Note 1(a) to that heading cannot reasonably be read to
simply ignore the very different use of the Medical Foods as compared to

---

[12] The Government's reliance on a Canadian International Trade
Tribunal ("CITT") decision regarding the classification of certain
unidentified 2007 Neocate formulas is misplaced. *See* Gov. Br. 14-15
(citing *Nutricia N. Am. v. President of the Can. Border Servs. Agency*,
2011 CarswellNat 7137, para. 96 (C.I.T.T.) (WL)). Such decisions are not
binding in the United States. *See Cummins Inc. v. United States*, 454
F.3d 1361, 1366 (Fed. Cir. 2006) ("The Supreme Court has rejected any
notion of deference or obligation to a foreign tribunal's decisions. . . .
[such decisions are] entitled, at most, to 'respectful consideration' . . . . It
is not a proxy for independent analysis."). And the Government ignores
that Nutricia brought another CITT action appealing the Canadian
Customs and Border Security Agency's ("CBSA's") classification of
Medical Foods including Periflex, Ketocal, Lophlex, *and* Neocate.
Appx4900-Appx4901. In 2019, CBSA agreed to settle the second case and
changed the classification of *all* of the Medical Foods at issue, including
Neocate products, to the duty-free Nairobi Protocol provisions under
Canada's version of Chapter 98. *Id.* In other words, the Canadian
government eventually agreed to classification under Canada's
equivalent of subheading 9817.00.96. That agreement is telling.

diabetic foods, food supplements, tonic beverages, and the other specific products listed for exclusion in that Note.

For these reasons, Note 1(a)'s reference to "dietetic" foods does not exclude Nutricia's Medical Foods from classification under heading 3004.

## B. The Medical Foods are not classifiable in Section IV, as required for Note 1(a) to apply.

As detailed above, the Medical Foods at issue are not "dietetic" foods. But even if they could be considered "dietetic" in some broad sense, the parenthetical at the end of Note 1(a) clarifies that it applies only to products that are *classifiable in Section IV*. *See* Op. Br. 57-60. The Government misconstrues this important limiting text, arguing (at 21) that the parenthetical in fact *directs* classification of excluded products into Section IV. That is wrong.

This Court has noted that "discerning the effect of any parenthetical requires an assessment of the specific language in context[.]" *Hanser v. McDonough*, 56 F.4th 967, 972 (Fed. Cir. 2022). In the context of the entirety of Note 1(a), the reference to Section IV in a parenthetical at the end adds precision: only goods *prima facie* classifiable under a heading in Section IV can be excluded from Chapter 30 under Note 1(a). Parentheticals that follow product descriptions and

22

contain HTSUS provisions (*e.g.*, headings, chapters or sections) are used in exclusionary notes throughout the tariff schedules. And these terms have been defined by CBP to limit the exclusions to products that are classifiable in the referenced parenthetical. *See, e.g.*, Cus. Bul. Dec. Vol. 37, No. 28, at 30-35 (July 9, 2003) (exclusionary note covering "textile materials for technical uses (heading 5911)" limited to goods *prima facie* classifiable under heading 5911).

The Government's proposed alternative interpretation of the parenthetical reference to Section IV—that *any* good that meets the terms of Note 1(a) *must* be classified under Section IV—produces absurd results. *See* Op. Br. 58-60 (explaining that salmon, which meets the terms of the note because it is directed for use in certain special diets, cannot be classified in Section IV because it is classified under Section I). The Government rejects as absurd the notion that salmon could be "dietetic" or "diabetic" for purposes of Note 1(a). Gov. Br. 20. This is odd given that salmon is a well-known diabetic and dietic food. Op. Br. 59 (citing *Diabetes Superstar Foods: Taking Charge of Your Health Through Food*, American Diabetes Association, https://diabetes.org/food-nutrition/food-and-blood-sugar/diabetes-superstar-foods). But in any case it is absurd to

23

suggest that there are no dietetic foods in Sections I (animal products), II (vegetable products) and III (animal and vegetable fats and oils), or any other provisions in the tariffs. It is the Government's broad interpretation of "dietetic" as used in Note 1(a), coupled with its view that the parenthetical reference to Section IV directs that all products that so qualify must be classified under that Section, that creates absurd results and would dramatically expand the scope of Section IV in a way that there is no indication that Congress intended.

Finally, the Government does not offer a single example of a dietetic product that is covered by Note 1(a) and is of the same class or kind as the Medical Foods. That is because any example they might use would not be of the same class as Nutricia's Medical Foods; dietetic foods are sold through different channels of trade, have different uses and lower costs, and are marketed and advertised differently than the Medical Foods. *See* Op. Br. 37-43 (applying *Carborundum*[13] factors to assess use of goods of same class or kind, as required by Additional Rules of Interpretation 1(a)).

---

[13] *United States v. Carborundum Co.*, 536 F.2d 373, 377 (C.C.P.A. 1976).

**III.    The Medical Foods cannot be classified under heading 2106 as "Food preparations not elsewhere specified or included" because they are specifically included under heading 3004.**

The Government incorrectly argues that Nutricia's Medical Foods are classified under heading 2106, a residual basket provision for "food preparations not elsewhere specified or included." Gov. Br. 21-22.

The Government's argument as to why Nutricia's Medical Foods should be classified under heading 2106 as "[f]ood preparations not elsewhere specified or included" is short and circular. Essentially, the Government's position boils down to this: "Because Nutricia's medical foods are not classifiable under heading 3004 . . . the medical foods are properly classified [under heading 2106]." Gov. Br. 21. But the Government effectively concedes the Medical Foods are products that meet the terms of heading 3004 (hence classifiable under this provision), but are not classified thereunder because of the Chapter 30 1(a) exclusionary note. In so arguing the Government ignores two other competing notes. Chapter 21 Note 1(f) excludes products from classification under heading 2106 if the product meets the terms of heading 3004. And, under Section VI Note 2, if a product is "classifiable"

(notably, the Note does not say "classified") under heading 3004, then the product cannot be classified in any "other heading of the tariff schedule."

The Government avoids consideration of these relevant notes by starting its analysis (and ending it) with Chapter 30, Note 1(a). But this Court has consistently ruled that when there are competing notes, one must examine the terms of the competing headings first. *See Lemans Corp. v. United States*, 660 F.3d 1311, 1322 n.7 (Fed. Cir. 2011) (it is inappropriate to resort to competing exclusionary notes before determining the appropriate heading because that would "yield the somewhat arbitrary result that the subject merchandise could be classified under different chapters based solely on which chapter the analysis began") (citing *Bauer Nike Hockey USA, Inc. v. United States*, 393 F.3d 1246, 1253 n.6 (Fed. Cir. 2004)); *Sharp*, 122 F.3d at 1450 (requiring analysis of heading terms before exclusionary notes, and explaining that notes should be applied in a symmetrical and complementary fashion, and to allow for a meaningful specificity analysis).

The Government attempts to distinguish this case from *Sharp* by asserting that "neither heading 2106 nor heading 3004 invites a relative-

specificity analysis[.] Gov. Br. 18. But that is precisely what heading 2106 does by including the text "not elsewhere specified or included"; it directs consideration of whether some other more specific heading applies. Thus, as in *Sharp*, it is inappropriate to use an exclusionary note to classify the product under a basket provision (here, 2106) rather than under a more specific heading that facially applies (here, 3004). That approach does not provide for a meaningful specificity analysis, nor does it allow all relevant notes to be interpreted in a symmetrical and complementary fashion as required by *Sharp*.

The Government attempts to distinguish *Bauer*, which involved competing chapter notes that precluded goods of one chapter from being classified in the other, by arguing that, while "note 1(f) to chapter 21 excludes 'products of heading … 3004' from classification under heading 2106 . . . note 1(a) to chapter 30 does not similarly incorporate heading 2106 by reference." Gov. Br. 19. This is incorrect. As explained above, the "(section IV)" parenthetical at the end of note 1(a) to chapter 30 requires that to be excluded by Note 1(a) to Chapter 30, a good must be classifiable in Section IV (which includes heading 2106). And even if goods do not need to be classifiable under Section IV for Note 1(a) to apply, Note 1(f)

to Chapter 21 is still relevant and competes with Note 1(a) to Chapter 30. To conduct a meaningful and symmetrical analysis as required by *Sharp,* this Court must first consider the terms of headings 2106 and 3004, and then consider all relevant notes. Further, the government's attempts to distinguish *Bauer* does not account for the Section VI, Note 2 mandate that products "classifiable" under (*i.e.*, meeting the terms of) heading 3004 cannot be classified anywhere else.

Finally, the Government states that "[b]ecause the classification is determined pursuant to GRI 1, any subsequent GRIs, like GRI 3(a), that would mandate relative-specificity analysis, cannot be considered." *See* Gov. Br. 21. We agree that classification may be properly resolved here under GRI 1 because Nutricia's Medical Foods meet the terms of heading 3004, do not meet the terms of heading 2106 (which is a residual basket provision), and Note 1(a) to Chapter 30 does not apply and cannot be used to trump Note 1(f) to Chapter 21 and Section VI, Note 2. *See R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1354 (Fed. Cir. 2014) (holding that certain vegetables are classified under heading 2004 because 2106 is a basket provision, and any products that are "specified or included" in another tariff heading cannot be classified in 2106).

28

However, if this Court believes that Nutricia's Medical Foods *could* be classified under the text of either heading 3004 or heading 2106, then a GRI 3 analysis is required. *See Bauer*, 393 F.3d at 1251. Under a GRI 3(a) relative specificity analysis, the text of heading 3004, covering "[m]edicaments … consisting of mixed or unmixed products for therapeutic or prophylactic uses, put up in measured doses," prevails because it is indisputably more specific than heading 2106, which covers "Food preparations not elsewhere specified or included." The Government did not and cannot credibly argue otherwise.

Thus, the last of the Government's arguments to avoid the plain text of heading 3004, which on its face describes the Medical Foods, fails. This Court should reverse the decision below and direct application of that heading to Nutricia's Medical Foods.

## IV. Subheading 9817.00.96, addressing products designed for use by handicapped persons, also applies.

Nutricia's Medical Foods are secondarily classified under subheading 9817.00.96 as products "specially designed . . . for the use or benefit of . . . handicapped persons[.]" HTSUS subheading 9817.00.96. Notably the Government does *not* attempt to argue that the children who rely on Nutricia's Medical Foods are not handicapped within the meaning

of that subheading. As Nutricia explained, they readily so qualify. Op. Br. 66-68. In nonetheless arguing that the subheading does not apply to the Medical Foods used by handicapped children, the Government ignores other important aspects of Nutricia's arguments, and makes several errors.

*First*, the Government has no meaningful response to Nutricia's reliance on Congress's broad intent in enacting this provision, as reflected in contemporaneous legislative history and subsequent case law discussing the intent behind the subheading. *See* Op. Br. 67-69. Coupled with the provision's broad text, Congress's intent to ensure duty-free treatment of items needed by disabled persons—such as young children with debilitating diseases who are considered disabled under the ADA—should control. *See V. G. Nahrgang v. United States*, 51 C.C.P.A. 76, 81 (1964) ("When the purpose of the statute is clear, it should not be construed so narrowly and technically as to prevent the effect that the Congress intended it to have.").

*Next*, the Government admits that the word "therapeutic" varies based on context and has a narrower meaning for purposes of Chapter 98: "merchandise which is used to heal or cure the condition causing the

handicap" rather than "compensate for, or help adapt to, the handicapped condition." Gov. Br. 25 (quoting *Richards Med. Co. v. United States*, 910 F.2d 828, 830-31 (Fed. Cir. 1990)). The Medical Foods are definitively the latter, not the former; they "compensate for" debilitating digestive conditions, and treat disabled children with those conditions; they do not cure them. The Government's attempt to argue otherwise (at 25-26) is unavailing; indeed, the trial court's quoted language describing the Medical Foods as used to "ameliorate" (not cure or heal) the diseases and conditions they treat only support's Nutricia's point.

The Government otherwise tries to redefine the term "therapeutic" for purposes of this subheading, arguing that Medical Foods do not "relieve discomfort" or "artificially compensate for a disability[.]" Gov. Br. 26. But those are not the words this Court used to define "therapeutic" specifically for purposes of Note 4(b)(iii) to subheading 9817.00.96 in *Richards*. In any event, Nutricia's Medical Foods do "relieve discomfort" for many children that take them, making it possible to ingest nutrients without extreme pain (among other unpleasant and uncomfortable symptoms), and "artificially compensate" (given that they are not natural

products) for the rare gastrointestinal disabilities with which those children are afflicted. Appx176-Appx183.

*Finally*, the Government asserts that Nutricia's Medical Foods are "preparations" as opposed to "articles" and thus they cannot be classified under subheading 9817.00.96. Gov. Br. 23-24. But "article" is simply a generic word[14] used to describe any goods classified under the HTSUS. *United States v. A. Johnson & Co.*, 588 F.2d 297, 300 (C.C.P.A. 1978) (noting that the term "article" is "used extensively throughout TSUS. In some instances it is used as a synonym for 'thing' and embraces any importation[.]"); *G. Hirsch's Sons v. United States*, 167 F. 309, 311 (2d Cir. 1909)) ("The word 'articles' when used in a tariff law should be given a broad, liberal meaning[.]"). There is no authority for the Government's novel proposition—which it did not raise below—that only physical goods like wheelchairs or reading-assistance devices, but not "substances" like "Medical Foods," can qualify as "articles" designed for use by handicapped persons under subheading 9817.00.96.

---

[14]    *Article*,    https://www.merriam-webster.com/dictionary/articles    ("a member of a class of things" and "a thing or person of a particular and distinctive kind or class").

Indeed, the cases cited by the Government (Gov. Br. 23-24) on this point actually support this broader definition of "article" here. In *ClearCorrect Operating, LLC v. ITC*, 810 F.3d 1283, 1300 (Fed. Cir. 2015), this Court held that the ordinary meaning of "articles" is "material things" as opposed to intangibles such as electronic data. The Government misrepresents *ClearCorrect* as finding that "[t]he tariff term 'articles' . . . has historically been used to distinguish manufactured objects from substances[.]" Gov. Br. 23. This is *not* what the Court said. Rather, the Court explained that "[t]here are however, tariff provisions in which the word 'article' is used in a restricted sense, such as those *distinguishing articles from materials*." *ClearCorrect Operating, LLC*, 810 F.3d at 1293. Given that 9817.00.96 does not distinguish between "articles" or "preparations," a restricted definition of "articles" does not apply here.[15]

---

[15] The Government's cite to *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1441 (Fed. Cir. 1998) is equally unavailing. The case did not discuss the meaning of the term "article," and the Court in fact used the term "article" to refer to the preparation at issue (a canned tomato product). *Id.* ("Under this [ ] rule of relative specificity, we look to the provision with requirements that . . . describe the *article* with the greatest degree of accuracy and certainty.") (emphasis added).

There is thus no reason that subheading 9817.00.96 should not also apply to the Medical Foods (in addition to heading 3004) to ensure that these life-saving products receive duty free treatment, like other products designed for use by persons with disabilities, such as the very ill babies and children who rely on the Medical Foods.

## CONCLUSION

This Court should reverse the decision below and hold that Nutricia's Medical Foods are primary classified under subheading 3004.50.50.40, and secondarily classified under subheading 9817.00.96.

/s/ John Brew
John Brew
Amanda Shafer Berman
Alexander H. Schaefer
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2595
Phone: (202) 624-2500
Fax: (202) 628-5116

*Counsel for Nutricia North America, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation contained in Fed. R. App. P. 32(a)(7) because, excluding the portions exempted by Rule 32(f), this brief contains 6,958 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Century Schoolbook.

*/s/ John Brew*
John Brew

## CERTIFICATE OF SERVICE

I certify that on September 18, 2024, I electronically filed the foregoing brief with the Clerk of Court for the U.S. Court of Appeals for the Federal Circuit through the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ John Brew*
John Brew