# United States Court of Appeals for the Federal Circuit

---

**NUTRICIA NORTH AMERICA, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-1436

---

Appeal from the United States Court of International Trade in No. 1:16-cv-00008-TCS, Senior Judge Timothy C. Stanceu.

---

Decided: November 17, 2025

---

AMANDA SHAFER BERMAN, Crowell & Moring, LLP, Washington, DC, argued for plaintiff-appellant. Also represented by JOHN BOWERS BREW, ALEXANDER SCHAEFER.

LUKE MATHERS, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by GUY EDDON, AIMEE LEE, PATRICIA M. MCCARTHY, JUSTIN REINHART MILLER, BRETT SHUMATE; YELENA SLEPAK, Office of the Assistant Chief Counsel, Bureau of Customs and Border Protection, United States Department of Homeland Security, New York, NY.

---

Before PROST, TARANTO, and STARK, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Nutricia North America, Inc. imported into the United States, from the United Kingdom, five products classified by the United States Food and Drug Administration (FDA) as "medical foods" under the Federal Food, Drug, and Cosmetics Act (FDCA). The United States Customs and Border Protection (Customs) classified the medical foods under chapter 21 ("Miscellaneous Edible Preparations") of the Harmonized Tariff Schedule of the United States (HTSUS)—specifically, under subheading 2106.90.99, which applies a non-zero duty to "[f]ood preparations not elsewhere specified." Nutricia protested, contending principally that its medical foods should instead be classified within HTSUS chapter 30 ("Pharmaceutical Products") under heading 3004, which, as relevant here, applies a zero duty to "[m]edicaments . . . consisting of mixed or unmixed products for therapeutic or prophylactic uses, put up in measured doses . . . or in forms or packings for retail sale[.]" Nutricia also proposed another duty-free classification as a backup—chapter 98's subheading 9817.00.96.

Customs rejected Nutricia's positions, and Nutricia then filed an action in the Court of International Trade (CIT). The CIT granted summary judgment, adopting the Customs-adopted classification under chapter 21's subheading 2106.90.99 and rejecting Nutricia's two alternatives. *Nutricia North America, Inc. v. United States*, 666 F. Supp. 3d 1363 (Ct. Int'l Trade 2023) (*CIT Decision*). On Nutricia's appeal, we now reverse, concluding that Nutricia's "medical foods" properly come within chapter 30's heading 3004 of the HTSUS, so we do not reach Nutricia's backup proposal within chapter 98.

I

A

There is no dispute about the material facts or the propriety of resolving the case by summary judgment, one way or another, to give the same answer for all five Nutricia products without distinguishing among them. Five Nutricia products are at issue:

> (1) MSUD Lophlex® LQ. This product is used as a nutrition therapy for children with branched-chain alpha ketoacid dehydrogenase complex (BCKDC) deficiency. The disorder is a permanent inborn metabolic condition, resulting in an impaired ability to metabolize certain essential amino acids, that cannot be managed through a diet of simply avoiding certain foods.
>
> (2) Periflex® Infant and (3) Periflex® Junior. Both products are used to treat individuals with phenylketonuria, which, like BCKDC deficiency, is a permanent inborn metabolic condition. These products exclude phenylalanine, a common amino acid, and provide certain supplements that are necessary for protein synthesis. Management of phenylketonuria through use of these products as foods can prevent the buildup of toxic metabolites that can lead to developmental delay, seizures, or death.
>
> (4) Neocate® Junior. This product is used as a nutrition therapy for individuals with eosinophilic esophagitis (an allergic response to certain proteins or peptides that can damage the esophagus wall) and short bowel syndrome (a condition that may result after part of the bowel is removed), among other conditions. This product contains a comprehensive array of essential individual amino acids rather than the whole proteins prevalent in ordinary foods.

> (5) Ketocal® Liquid. This product food is a nutrition therapy used to treat children with Glucose Transporter Type 1 Deficiency (GLUT 1) and intractable (or refractory) epilepsy, among other conditions. The product helps mitigate the risk of certain seizures by providing a ketogenic diet, which reduces carbohydrates. Naturally occurring food cannot match the unique proportion of fat calories to the non-fat protein and carbohydrate calories in this product.

*See CIT Decision*, at 1367–68, 1374–77 & nn.5–9 (describing and listing ingredients of the five products).

The products have common characteristics: They are administered enterally (introduced into the intestines or gastrointestinal tract)—rather than, *e.g.*, intravenously—and they contain no active pharmacological ingredients. *See CIT Decision*, at 1372; J.A. 4441. The products are formulated to omit certain ingredients that are standard in ordinary foods (such as particular amino acids or carbohydrates) yet are composed of particular nutritional substances (such as particular amino acids, vitamins, or mineral salts) so that the combination provides a nutritional therapy for individuals with particular health conditions. *See CIT Decision*, at 1373–74; J.A. 537. Still more specifically, the parties agree on appeal that the five products may be considered without differentiating them for classifications purposes and are "medical foods" under the FDCA, 21 U.S.C. § 360ee(b)(3), and an FDA implementing regulation, 21 C.F.R. § 101.9(j)(8). *CIT Decision*, at 1372, 1382; J.A. 4436 (Customs decision).

Congress defined a "medical food" as

> a food which is formulated to be consumed or administered enterally under the supervision of a physician and which is intended for the specific dietary management of a disease or condition for which distinctive nutritional requirements, based

> on recognized scientific principles, are established by medical evaluation.

21 U.S.C. § 360ee(b)(3). The FDA supplemented the statutory definition in its nutritional labeling requirements for foods, explaining that a "medical food" must possess the following characteristics:

> (i) It is a specially formulated and processed product (as opposed to a naturally occurring foodstuff used in its natural state) for the partial or exclusive feeding of a patient by means of oral intake or enteral feeding by tube;
>
> (ii) It is intended for the dietary management of a patient who, because of therapeutic or chronic medical needs, has limited or impaired capacity to ingest, digest, absorb, or metabolize ordinary foodstuffs or certain nutrients, or who has other special medically determined nutrient requirements, the dietary management of which cannot be achieved by the modification of the normal diet alone;
>
> (iii) It provides nutritional support specifically modified for the management of the unique nutrient needs that result from the specific disease or condition, as determined by medical evaluation;
>
> (iv) It is intended to be used under medical supervision; and
>
> (v) It is intended only for a patient receiving active and ongoing medical supervision wherein the patient requires medical care on a recurring basis for, among other things, instructions on the use of the medical food.

21 C.F.R. § 101.9(j)(8).

Medical foods, which are subject to their own special regulatory treatment under the FDCA, are "distinguished

from the broader category of foods for special dietary use . . . by the requirement that [they] are to be used under medical supervision." U.S. Food and Drug Administration, No. 7321.002, Compliance Program Guidance Manual at 1 (2008) (*FDA Manual*). By this distinction, the FDA differentiates medical foods from dietary foods "such as meal replacements or diet shakes, or products for the management of diseases, such as diabetes, that can be managed through modification of the normal diet alone." *Is It Really 'FDA Approved'?*, U.S. FOOD & DRUG ADMINISTRATION (May 10, 2022), https://www.fda.gov/consumers/consumer-updates/it-really-fda-approved. The distinction reflects the FDA's recognition of "specially formulated and processed" medical foods as a "major treatment modality" for patients. *FDA Manual*, at 1.

B

Between November 13 and 26 of 2014, Nutricia imported the five medical foods at issue here. J.A. 4699, 4715, 4909. The 2014 edition of the HTSUS is applicable, *see CIT Decision*, at 1369 n.2—specifically, Revision 1, which went into effect in July 2014—so all our references to the HTSUS are to that version. In 2015, Customs classified Nutricia's products within HTSUS chapter 21 ("Miscellaneous Edible Preparations") under subheading 2106.90.99 as "[f]ood preparations not elsewhere specified or included."[1] *See* J.A. 4699. That classification resulted in a 6.4 percent duty. *See* HTSUS subheading 2106.90.99; *CIT Decision*, at 1369. In contrast, and most important here, the medical foods would have entered duty free if they were classified as a "medicament" under heading 3004 of chapter 30, as Nutricia has principally argued they should be. *See*

---

[1] Subheading 2106.90.99 reads: "Food preparations not elsewhere specified or included: Other: Other: Other: Other: Other: Other."

HTSUS heading 3004; *CIT Decision*, at 1369. Heading 3004 gives the following scope description:

> Medicaments (excluding goods of heading 3002, 3005 or 3006) consisting of mixed or unmixed products for therapeutic or prophylactic uses, put up in measured doses (including those in the form of transdermal administration systems) or in forms or packings for retail sale[.]

That description must be read in conjunction with note 1(a) to chapter 30 (which contains heading 3004). That note says:

> 1. This chapter does not cover: (a) Foods or beverages (such as dietetic, diabetic or fortified foods, food supplements, tonic beverages and mineral waters), other than nutritional preparations for intravenous administration (section IV)[.]

The referred-to "section IV" of the HTSUS includes chapters 16 through 24.

In 2015, Nutricia protested under 19 U.S.C. § 1514, primarily arguing for classification of its medical foods as a "medicament" under heading 3004—specifically, subheading 3004.50.5040.[2] *See CIT Decision*, at 1369; J.A. 4700. Nutricia also argued, as a backup, that its products are classifiable under chapter 98's subheading 9817.00.96 as "[a]rticles specially designed or adapted for the use or benefit of . . . handicapped persons," which may enter the

---

[2] Subheading 3004.50.5040 reads: "Other medicaments containing vitamins or other products of heading 2936: Other: Other." The referred-to heading 2936 covers, in relevant part, "provitamins" and "vitamins." *See* HTSUS heading 2936. No dispute before us turns on the choice of subheading within heading 3004 if heading 3004 applies.

country duty free.[3] *See* HTSUS subheading 9817.00.96; *CIT Decision*, at 1369–70. Customs denied Nutricia's two protests, choosing heading 2106 as the proper classification.

On September 1, 2016, Nutricia filed a complaint in the CIT under 19 U.S.C. § 1515 and 28 U.S.C. § 1581(a), challenging the protest denials as resting on an incorrect classification of its products. *See CIT Decision*, at 1366–67; J.A. 42. In 2022, after a record was developed, Nutricia and the government each moved for summary judgment in its favor. *CIT Decision*, at 1366–67. The parties disagreed about the proper interpretation and applicability of heading 3004 and subheading 9817.00.96 (the backup classification urged by Nutricia) and of subheading 2106.90.99 (adopted and defended by Customs). *CIT Decision*, at 1369–70.

On December 4, 2023, the CIT ruled in favor of the government. *CIT Decision*, at 1382. The CIT concluded that heading 3004 did not apply. Specifically, based decisively on the exclusionary provision in chapter 30 note 1(a), with support from the chapter 30 explanatory notes, the CIT ruled that Nutricia's medical foods are not "medicaments." *CIT Decision*, at 1370–80.

The CIT reasoned that "[e]ven if some definitions of the term 'medicaments' were considered broad enough to encompass what [Nutricia] describes as . . . 'medical food' products, it would not follow that chapter 30, HTSUS

---

[3] Subheading 9817.00.96 reads: "Articles specially designed or adapted for the use or benefit of the blind or other physically or mentally handicapped persons; parts and accessories (except parts and accessories of braces and artificial limb prosthetics) that are specially designed or adapted for use in the foregoing articles: Other."

necessarily includes these products" because of the exclusion in note 1(a). *CIT Decision*, at 1371. Note 1(a) states:

> This chapter [*i.e.*, chapter 30, which contains heading 3004] does not cover: (a) Foods or beverages (such as dietetic, diabetic or fortified foods, food supplements, tonic beverages and mineral waters), other than nutritional preparations for intravenous administration (section IV)[.]

The CIT concluded that chapter note 1(a) created a "general exclusion" applicable to all "orally" consumed "nutritional preparations" that are "'foods or beverages' within the meaning of those terms as used in note 1(a)." *Id.* at 1371–72. The CIT stated specifically that note 1(a) "identifies 'dietetic' and 'diabetic' foods . . . as an example of goods that are within the exclusion . . ., connoting that even foods specialized for intended use by persons whose medical condition requires a specialized diet fall within the scope of that exclusion." *Id.* at 1372. The CIT concluded that note 1(a) does not "distinguish . . . 'medical foods' from other [excluded] foods[.]" *Id.*

Having held heading 3004 inapplicable, the CIT also rejected Nutricia's argument that its medical foods may be classified as an "[a]rticle[ ]" that is "designed or adapted for the use or benefit of . . . handicapped persons" under subheading 9817.00.96. *Id.* at 1380–81. It is undisputed that, if neither heading 3004 nor subheading 9817.00.96 applies to the products at issue here, the catch-all heading 2106 applies. The CIT adopted that heading as the proper classification here. *CIT Decision*, at 1379–82.

The CIT entered final judgment on December 4, 2023. Nutricia timely appealed. ECF No. 1. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## II

No material facts are disputed here. In particular, it is undisputed that all five products are medical foods under

the FDCA and should be treated together for classification purposes. In this situation, our classification inquiry "collapses into a determination of the proper meaning and scope of the HTSUS terms" and that determination, "as a matter of statutory construction, is a question of law," so we review the CIT's decision de novo. *Len-Ron Manufacturing Co. v. United States*, 334 F.3d 1304, 1308 (Fed. Cir. 2003) (internal quotation marks and citations omitted). We conclude that heading 3004 applies. It is undisputed before us that, if we conclude that the medical foods at issue come within heading 3004 (as we do), we need not decide any other issue. Chapter 21 does not apply if heading 3004 does, *see* HTSUS chapter 21, note 1(f) ("This chapter does not cover . . . a medicament or other products of heading . . . 3004[.]"), and there is no articulated need, given the duty-free treatment provided by heading 3004, to consider applicability of subheading 9817.00.96, another alleged basis for duty-free treatment. We therefore limit our opinion to the issue of heading 3004's coverage of Nutricia's medical foods.

A

The HTSUS comprises three binding sources of classification: (1) headings that specify general categories of products, (2) subheadings that segregate products within each category, and (3) chapter notes. *See Shamrock Building Materials, Inc. v. United States*, 119 F.4th 1346, 1352 (Fed. Cir. 2024). Congress has provided General Rules of Interpretation (GRI) to govern the interpretive process. *Id.*; *Schlumberger Technology Corp. v. United States*, 845 F.3d 1158, 1163 (Fed. Cir. 2017). As relevant here, GRI 1 requires "classification [to] be determined according to the terms of the [HTSUS] headings and any relative section or chapter notes." *Schlumberger*, 845 F.3d at 1163 (citing GRI1) (alteration in original) (internal quotation marks and emphasis removed). We have explained that the chapter notes are "an integral part of the HTSUS, and have the same legal force as the text of the headings." *Roche*

*Vitamins, Inc. v. United States*, 772 F.3d 728, 731 (Fed. Cir. 2014). We generally give tariff terms their "common and commercial meanings, which are presumed to be the same," *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999), and we may also consult the non-binding explanatory notes to "help resolve an interpretive dispute" about the meaning of headings and relevant section or chapter notes. *Shamrock*, 119 F.4th at 1352 (citing *Kahrs International, Inc. v. United States*, 713 F.3d 640, 644–45 (Fed. Cir. 2013)).

B

The two binding sources for determining whether the medical foods here are covered by heading 3004 are 3004's language and chapter 30 note 1(a)'s language. The CIT did not rely on the former to find medical foods to be outside heading 3004, and the government here makes essentially no argument for such a conclusion based on the language of 3004. The dispositive issue, then, is what to make of chapter 30 note 1(a). Before turning to that issue, however, we recite the compelling reasons that Nutricia's products come within 3004's language, as confirmed by the absence of a contrary analysis from the CIT or the government.

1

It is undisputed that Nutricia's products are "medical foods," as defined under the FDCA. They are "formulated" to be used "under the supervision of a physician" for "the specific dietary management of a disease or condition for which distinctive nutritional requirements . . . are established by medical evaluation." 21 U.S.C. § 360ee(b)(3). They are "specially formulated and processed product[s] (as opposed to a naturally occurring foodstuff used in its natural state)" for "feeding of a patient by means of oral intake or enteral feeding by tube"; are intended for a patient with "therapeutic or chronic medical needs" linked to impaired intake or processing capacities or other "special

medically determined nutrient requirements" that cannot be managed "by the modification of the normal diet alone"; "provide[ ] nutritional support specifically modified for the management of the unique nutrient needs that result from the specific disease or condition, as determined by medical evaluation"; and are "intended to be used under medical supervision" and "only for a patient receiving active and ongoing medical supervision wherein the patient requires medical care on a recurring basis for, among other things, instructions on the use of the medical food." 21 C.F.R. § 101.9(j)(8).

Those characteristics bring the products at issue within heading 3004's language of "medicament." The term has standard, broad definitions that embrace a substance designed for medically defined therapy for (*i.e.*, treatment of) a medically identified condition. *See*, *e.g.*, *CIT Decision*, at 1370–71 & n.3; J.A. 4873–74. Its scope is not defined by what is regulated as a "drug" under the FDCA, 21 U.S.C. § 321(g)(1), and Congress, in heading 3004, did not use the term "drug," whereas it used that term repeatedly in chapter 29 of the HTSUS. Nothing about the broad term "medicament" excludes therapeutic substances formulated to prevent or to moderate outbreaks of symptoms of medical conditions, such as those which are incurable.

Nutricia's products meet the requirements of heading 3004 that the covered "medicaments" "consist[ ] of mixed or unmixed products for therapeutic or prophylactic uses, put up in measured doses . . . or in forms or packings for retail sale." Nutricia's medical foods are mixed products that are consumed in measured dosages and are available through retail sale (which does not imply mass-market general consumer marketing). J.A. 861, 4897. And they are made, prescribed, and marketed for "therapeutic and prophylactic uses" (which might be inherent in the very term "medicament"), as the government recognizes. *See* Appellee's Br. at 16–17, 28 ("[T]here is no dispute that the

medical foods are used in nutritional therapy to treat even drug-resistant conditions like intractable epilepsy. . . . That Nutricia's medical foods do not 'cure' thus does not render them non-therapeutic[.]"). Indeed, as the CIT observed when discussing the chapter 98 ground, which involves the term "therapeutic," the parties effectively agree that Nutricia's medical foods are "'indicated for use in the treatment of a variety of diseases, predominantly in very young children,' [and] that 'in some instances they are the only, or primary, available treatment to ameliorate these severe and sometimes fatal conditions' and that '[m]edical professionals refer to the deployment of these products as 'nutritional therapy,' thus confirming their therapeutic use and value." *CIT Decision*, at 1381 (alteration in original).

We have held that heading 3004 is a "use" provision, meaning that it "limits the category [of products] to those [ ] for specified uses," and "the controlling use is the principal use." *Warner-Lambert Co. v. United States*, 425 F.3d 1381, 1384 (Fed. Cir. 2005) (internal quotation marks omitted); Rule 1(a), HTSUS Additional U.S. Rules of Interpretation. Here, the definitions of "medical foods" under the FDCA make clear that the medical foods at issue are principally used therapeutically or prophylactically for specific medical conditions under medical supervision. And other evidence confirms the point, including the report submitted by Nutricia's expert, *see*, *e.g.*, J.A. 169–70, Nutricia's product labels, J.A. 2638–81, and Nutricia's marketing materials directed to medical providers, who are responsible for recommending the product to patients, J.A. 97–98, 183. *See Warner-Lambert*, 425 F.3d at 1383 (treating such material as relevant to use analysis).

For those reasons, if the language of heading 3004 were the only binding provision, Nutricia would easily be correct that the provision covers its products at issue here.

But there is an additional binding provision. Note 1(a) of chapter 30 states that chapter 30 does not cover "[f]oods . . . (such as dietetic, diabetic or fortified foods, [and] food supplements, . . .), other than nutritional preparations for intravenous administration (section IV)[.]" The government contends, and the CIT concluded, that note 1(a)—specifically, its listing of "dietetic . . . foods"—embraces medical foods, thus excluding them from heading 3004 and all the rest of chapter 30. *CIT Decision*, at 1371; Appellee's Br. at 13–20. We treat note 1(a) as "an integral part of the HTSUS" and give it "the same legal force as the text of the headings." *Roche Vitamins*, 772 F.3d at 731 (citation omitted); *see also Magid Glove & Safety Manufacturing Co. LLC v. United States*, 87 F.4th 1352, 1358 (Fed. Cir. 2023) ("As part of the legal text of the HTSUS, section and chapter notes have the force of statutory law.").

We proceed in accordance with the government's own formulation of the proper approach—that GRI 1 "provides for the holistic consideration of the terms of the headings 'and any relative section or chapter notes.'" Appellee's Br. at 17. That approach, which is consistent with the HTSUS-specific General and Additional Rules of Interpretation, reflects a general legal principle that one statutory provision should be interpreted in the light of other related provisions, especially (but not only) provisions of the same statute, to achieve coherence where reasonable. *See, e.g.*, *Food and Drug Administration v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000); *Teva Branded Pharmaceutical Products R&D, Inc. v. Amneal Pharmaceuticals of New York, LLC*, 124 F.4th 898, 917 (Fed. Cir. 2024); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS at 180 (2012) (stating that "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory," and that "there can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously"). Of course, two provisions of a law can make clear,

*e.g.*, through an explicit "provided, however" or similar clause, that one has primacy over the other. But neither heading 3004 nor note 1(a) contains such primacy-establishing language. In this circumstance, we look to see if note 1(a) warrants an interpretation that renders it consistent with the clear meaning of heading 3004 in the respect at issue. We conclude that note 1(a) should not be read to embrace Nutricia's medical foods—or, therefore, to exclude them from heading 3004.

The dispute over the meaning of note 1(a) comes down to the following. The government argues, as the CIT essentially concluded, that note 1(a)—in its coverage of foods "such as . . . dietetic . . . foods"—embraces any product used for dietary reasons, as long as it "contain[s] only nutritional substances," even if it qualifies as a "medical food" under the FDCA, it is not generally marketed to consumers, its only meaningful use is as a medically supervised therapy for specific medical conditions, and it is not a mere modification of a generally available food item that retains the item's basic commercial character (*e.g.*, fat-free milk, gluten-free bread, or sugar-free soda) but a preparation made out of chemical-level substances (such as specific amino acids, proteins, vitamins, etc.) for specific medical conditions. Appellee's Br. at 12; *see also id.* at 12–20. Nutricia argues that note 1(a) should be read as limited to foods generally marketed to consumers and used by many people outside the above-noted context of therapy for specific conditions under medical supervision, thus excluding all "medical foods" or at least those specially formulated out of chemical-level substances rather than a mere modification of an existing food item. Appellant's Opening Br. at 52–57. In

our view, Nutricia's position is, on the whole, the better one for several reasons taken together.[4]

One dictionary definition of "dietetic" on which the government relies is this: "*adapted* for use in special diets." Appellee's Br. at 13 (emphasis added) (internal citations omitted) (quoting Merriam-Webster Online Dictionary). As applied to "foods," that proposed definition does not clearly help the government. An ordinary meaning of "adapt" is to "adjust or modify" something preexisting, RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 15 (College Edition 1968), and to "modify" is generally to alter only "moderately or in minor fashion," as the Supreme Court explained in *MCI Telecommunications Corp. v. American Telephone & Telegraph Co.*, 512 U.S. 218, 225 (1994) (citations omitted). That definition tends to favor Nutricia's position more than the government's, given the character of the medical-food products as specially formulated preparations made from chemical-level substances for individuals with specific disorders, as the result is not a mere modification of, nor resembles, a preexisting food item. *See* Oral Arg. 4:58–6:11; 12:28–13:11, https://www.cafc.uscourts.gov/oral-arguments/24-1436_10082025.mp3; 21 C.F.R. § 101.9(j)(8).

Congress's overall drafting of note 1(a) also runs counter to the government's position that the note covers all foods that contain only nutritional substances ("other than

---

[4] It appears at present that the best bottom-line statutory interpretation, for substantive and practical reasons, is that heading 3004 does—because note 1(a) does not—encompass anything that qualifies as a "medical food" under the FDCA. We need not squarely adopt that categorical rule in this case, however, as Nutricia's products have characteristics (*e.g.*, concerning composition) that might go beyond what is necessary to qualify as "medicaments" and provide additional reason that they are outside note 1(a).

nutritional preparations for intravenous administration").[5] Had Congress meant what the government urges, it had other choices of phrasing—perhaps simply saying "foods or beverages, other than . . . ." Instead, Congress included a specific listing: "Foods or beverages (such as dietetic, diabetic or fortified foods, food supplements, tonic beverages and mineral waters), other than . . . ." That choice itself indicates adoption of a narrower scope for the note (to foods or beverages "such as" the listed items) than the government urges. Indeed, the government's position runs counter to the surplusage canon of construction, which prefers interpretations that "give[ ] effect to every clause and word" of a provision. *Marx v. General Revenue Corp.*, 568 U.S. 371, 385 (2013) (citation omitted and internal quotation marks omitted); *see ClearCorrect Operating, LLC v. International Trade Commission*, 810 F.3d 1283, 1294 (Fed. Cir. 2015) (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)). Indeed, the government's broad view even as to "dietetic" runs counter to the surplusage canon, as it would make at least the separate mention of "diabetic" (perhaps other items as well) "superfluous, void, or insignificant." *ClearCorrect*, 810 F.3d at 1294 (quoting *TRW*, 534 U.S. at 19); *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961).

An additional canon of construction further indicates that "dietetic" (and note 1(a) overall) should not be given the broad meaning the government urges when it goes beyond the notion of a moderate alteration of an existing food or beverage. The noscitur a sociis canon (the association of

[5] We omit mention of the parenthetical "(section IV)" in note 1(a). Although the CIT placed some reliance on that parenthetical to support its ruling about the scope of note 1(a), *CIT Decision*, at 1371, Nutricia explained why that parenthetical does not support the CIT's view, Appellant's Opening Br. at 57–60, and the government here places no reliance on the parenthetical.

words canon) counsels that a term in a series like this one be given a meaning consistent with its neighboring terms. *See Schlumberger*, 845 F.3d at 1165 (invoking the canon in a HTSUS matter); *see also United States v. Williams*, 553 U.S. 285, 294 (2008); *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 225–26 (2008); *Veterans4You LLC v. United States*, 985 F.3d 850, 862 (Fed. Cir. 2021). All the terms other than "dietetic" fit Nutricia's narrower understanding of note 1(a)'s scope; "dietetic" should be understood the same way.[6]

We consider, finally, the Explanatory Notes "maintained by the World Customs Organization," which are "not legally binding" but are "generally indicative of the proper interpretation of a tariff provision." *CIT Decision*, at 1369 (internal quotation marks and citations omitted). The explanatory notes here do not alter our conclusion as to the medical foods at issue.

The explanatory note to chapter 30 heading 3004 (which is, relevantly, identical to the note for heading 3003) states that the heading's "provisions . . . do not apply to foodstuffs or beverages such as dietetic, diabetic or fortified foods, tonic beverages or mineral waters (natural or artificial), which fall to be classified under their own appropriate headings," J.A. 4836 (emphasis removed), and it immediately adds: "This is essentially the case as regards food preparations containing only nutritional substances," *id.*; *see CIT Decision*, at 1372. The first sentence does not answer the question whether medical foods are dietetic (the relevant term), and the second sentence states a generalization by its terms not absolute and not yet addressing

---

[6] If "dietetic" appeared in the phrase as a catch-all, such a narrowing would be supported by the closely related ejusdem generis canon. *See*, *e.g.*, *Ali*, 552 U.S. at 223–25; *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1392 (Fed. Cir. 1994).

the situation of "medicinal" substances, *i.e.*, substances for therapy. When the note then addresses "foodstuffs and beverages containing medicinal substances," it says that they are excluded from heading 3004 "*if* those substances are added solely to ensure a better dietetic balance, to increase the energy-giving or nutritional value of the product or to improve its flavour, always provided that the product retains its character of a foodstuff or a beverage," J.A. 4836 (emphasis added), and in a similar vein, it says that also excluded are "food supplements containing vitamins or mineral salts which are put up for the purpose of maintaining health or well-being but have *no indication as to use for the prevention or treatment of any disease or ailment*," *id.* (emphasis added). *See CIT Decision*, at 1372–73. None of this directly deals with medical foods or with the characteristics we have discussed, including the specific formulation and marketing for medically supervised use for specific medical conditions. And the language offers some support, if only by possible negative implication, for Nutricia's position that note 1(a) is inapplicable to its medical foods, given their key characteristics.

An explanatory note for chapter 21—Explanatory Note 21.06 ¶ 16—supports Nutricia's position. It states that food preparations classifiable under heading 2106 "often" have indications on the packaging that "they maintain *general* health or well-being" but "[s]imilar preparations . . . intended for the *prevention or treatment of diseases or ailments* are excluded (heading 30.03 or 30.04)." J.A. 4438 (emphasis added). That statement positively suggests coverage by heading 3004 for the medical foods here.

In sum, the applicability of heading 3004's language to medical foods is clear and not even meaningfully contested. In contrast, there are substantial difficulties with concluding that Nutricia's medical foods come within chapter note 1(a) even when the note is considered alone, and the nonbinding explanatory notes do not resolve those difficulties in the government's favor. In this circumstance, the

narrow view of note 1(a) is also supported by the principle favoring an interpretation that achieves consistency with the clearly applicable language of heading 3004.

III

We reverse the CIT's classification of the medical foods under HTSUS chapter 21 and hold that the proper classification is heading 3004. We remand for the CIT to decide the proper subheading, which may not be in dispute.

The parties shall bear their own costs.

**REVERSED and REMANDED**